Johnson, J.
 

 As early as 1787, (1
 
 Gr. Laws of New- York,
 
 428,) the legislature of this state provided for divorces upon the ground of adultery to be granted by the court of chancery. The chancellor is authorized, by sentence or decree, to pronounce the marriage between the parties to be dissolved, and both of them freed from the obligations of the same. By the 3d section of the same act it was provided, “ That after the dissolution of any marriage has been pronounced by virtue of this act, it shall not be lawful for the party convicted of adultery to remarry any person whatsoever; and that every such remarriage shall be null and void; but that the other party may make and complete another marriage in like manner as if the party convicted was actually dead, any law, usage or custom, to the contrary thereof in any wise, notwithstanding.”
 

 In 1813, as a part of the general revision of the statutes which then took place, an act was passed concerning divorces, and for other purposes, (2
 
 R. L.
 
 197,) by the 4th section of which it was provided, that upon the ascertainment of the defendant’s adultery by the court of chancery, “ it shall be lawful for the said court to decree that the marriage between the parties shall be dissolved, and each party freed from the obligation^ thereof. And it shall be lawful for the complainant after such dissolution of the marriage, to marry again as though the defendant was actually dead. But it shall not be lawful for the defendant, who may be so convicted of adultery, to marry again until the complainant shall be actually dead.”
 

 The revised statutes contain two provisions relating to this subject. Part two, chapter 8, title 1," section 5, (2
 
 R. S.
 
 139,)
 
 *223
 
 provides as follows, “ no second, or other subsequent marriage, shall be contracted by any person during the lifetime of any former husband or wife of such person, unless, 1. The marriage with such former husband or wife, shall have been annulled or dissolved, for some cause other than the adultery of such person; or, 2. Unless such former husband or wife shall have been finally sentenced to imprisonment for life. Every marriage contracted in violation of the provisions of this section shall be absolutely void,” except in a single case not relating to the question in this cause. Section 49 of the same title, (2
 
 R.
 
 S. 146,) provides, “ whenever a marriage shall be dissolved pursuant to the provisions of this article, [of divorces dissolving the marriage contract,] the complainant may marry again during the lifetime of the defendant; but no defendant convicted of adultery shall marry again, until the death of the complainant.”
 

 The second part of the revised statutes took effect as law on the first day of January, 1830. (2
 
 R. S.
 
 778, § 8.) The general repealing act passed December 10, 1828, (3
 
 R.
 
 S. 129, § 1,) enacted, that “ From and after the 31st day of December, in the year 1829, the following acts and parts of acts, heretofore passed by the legislature of this state, shall be repealed,” and specified among others the “act concerning divorces, and for other purposes,” passed April 13, 1813.
 

 It is not denied, and is at any rate clear, that up to the time of the repeal of the act of 1813, concerning divorces, the provision of the 4th section of that act, which says, “ it shall not be lawful for the defendant, who may be so convicted of adultery, to marry again until the complainant shall be actually dead,” applied to James Bidgway, so that he was not capable of contracting a valid marriage within this state, at any time prior to that period, and subsequent to his marriage with Catharine Dobb. The disability to marry, declared by this section, as well as by the 3d section of the act of 1787, above referred to, applied only to parties proceeded against and divorced as adulterers, under the provisions of those acts respectively. Under neither of those acts was an incapacity to marry imposed upon any per
 
 *224
 
 son against whom a decree of divorce was not pronounced in our court of chancery; nor was there any other statute law of this state creating an incapacity to marry, except the “act to restrain all persons from marrying until their former Avives and former husbands be dead,” passed 7th February, 1788, which enacted, “ that if any person or persons being married, or who hereafter shall marry, do at any time marry any person or persons, the former husband or wife being alive, then every such offense shall be felonybut out of the operation of this act was expressly excepted, among other eases, “any person or persons who are, or shall be, at the time of such marriage, divorced by the sentence or decree of any court having cognizance thereof.” This act also was repealed by the general repealing act before referred to, but remained in force until that repeal took effect. As to all persons, therefore, whose marriages came within the exception above stated, and to whom the disabilities created by the acts of 1787 and 1818 did not apply, marriage prior to January 1,1830, was no violation of any statute of this state, and its validity depended upon common law principles only.
 

 Following the pattern of these acts of 1787 and 1813, the 49th section of the revised statutes,
 
 (supra,)
 
 was made applicable to marriages dissolved pursuant to the provisions of the article in which that section is contained. It has, therefore, no application to the case of Ridgway, against whom a divorce was granted under the act of 1813.
 

 In further considering this case, I shall concede, without, however, meaning to express an opinion upon the question, that the saving words in the general repealing act are not broad enough in their terms to continue in existence, by force of the act of 1813, the disability to marry which Ridgway incurred upon the decree of divorce under that act for his adultery. Nor shall I assume that any part of the obligation of his first marriage remained after the decree of divorce; on the contrary, I consider all the obligations of that marriage extinguished by the decree of divorce. Assuming, for the purpose of giving full effect to the plaintiff’s proofs, that after January 1,1830, a marriage
 
 *225
 
 ceremony was celebrated between Ridgway and the plaintiff below, within this state. I shall consider the question of its validity under section 5, (2
 
 R. S.
 
 139,) before referred to.
 

 Marriage, although a natural institution, is subject to the positive regulations of the state, which has power to determine the conditions upon which, and under which it may be contracted, or shall be forbidden. For instance, the revised statutes, (2
 
 R. S p.
 
 138, § 2,) fixed 17 for males and 14 for females, as the ages at which they could contract marriage, whereas, up to that time, 14 for males and 12 for females, had been the ages of con tract. This section was very soon repealed, but it was never doubted that the legislature possessed the power to enact it, nor was it ever supposed, that boys who were over 14 and under 17 at the time when it was passed, could upon that ground claim not to be included in its purview. So, if the legislature should now enact that no person under 25, or over 60, may hereafter contract marriage in this state, it would be absurd to pretend that persons who had reached the present lawful age to marry, but were not 25, or those now over 60, were exempt from the operation of the law. Of exactly the same character is section 5. Its object is to fix certain personal conditions in which marriage may not be contracted. It speaks from the time when it took effect as to all marriages thereafter to be contracted, and makes them unlawful and void if the state of either party to the marriage, at the time of its celebration, came within its prohibitions. Its prohibitory language is, “no second, or other subsequent marriage, shall be contracted by any person during the lifetime of any former husband or wife of such person.” What facts, then, are necessary to bring a. party within this prohibition
 
 1
 
 In the first place, there must have been a prior marriage. It is not necessary that the prior marriage should have taken place in this state, or after the statute took effect. A marriage at any time and any where, answers the requirement of the statute. In the next place, both parties to such prior marriage must be living. That is the plain requirement of the language, “ during the lifetime of any former husband or wife,”
 
 *226
 
 and it requires nothing more. It does not import that the relation still continues, or on the other hand that it has ceased: upon that point it is silent; but limits the inquiry to the dry fact, whether the person with whom the prior marriage was contracted still lives, at the time of the subsequent marriage. The plaintiff’s counsel asks us to read it, “ during the lifetime of any
 
 husband or wife
 
 to whom the party was formerly married.” The objection to the proposed reading is a plain one. The expression reads well as it stands, and conveys a readily apprehended meaning, which may be very much altered if we should yield to the request. So read, it would or might import, that the relation of husband and wife must still continue between- the former husband and wife at the time of the subsequent marriage. If that is the correct reading of the phrase, then the first exception is entirely unnecessary; for parties once married, but whose marriage has been dissolved, can in no legal sense be said to be husband and wife. Nor, on the other hand, is the expression, former husband or wife, to be construed as implying that the -relation no longer subsists ; for, in that case, the exception introduced by the 6th section would be rendered inapplicable. That section relates to the case of a husband or wife absenting himself or herself for five successive years, and not known by the other party to be living within that period, and of course involves the continuance of the relation. These considerations show that the word, former, as used in the section in question, imports merely, that the relation of husband and wife once existed, but neither affirms its continuance or denies its termination.
 

 The prohibition then relates to the case of either party to a marriage, whenever and wherever contracted, both the parties to which are living, and prohibits either party to contract a second or other subsequent marriage during the lifetime of the other, except in certain cases specified. It ought also to be noticed, that while the several prohibitions to marry contained in the acts authorizing the court of chancery to grant divorces for adultery, operate only upon those against whom divorces are granted under those several acts, the section we are now con
 
 *227
 
 sidering has a much broader operation. Its subject matter is the prohibition of marriages within this state, to certain persons who come within its terms. It covers the case of one married abroad and divorced abroad for his own adultery, just as plainly as it does the case of a marriage and divorce for the same cause here. If I have put the proper construction upon the language of the statute, it is quite plain that it covers the case of James Ridgway, at any instant during his life after the statute took effect. When he may. have undertaken to marry the plaintiff, Eliza Ann, if the inquiry had arisen whether his case -was within the prohibition of section 5, it must have been answered that Catharine Dobb was his former wife and was alive, and those are the only «facts upon which the prohibition is founded.
 

 The next question, and the only remaining one is, whether ■the first exception covers Ridgway’s case. It excepts out of the prohibition to marry the case of a person whose marriage with the former husband or wife shall have been annulled or dissolved for some cause other than the adultery of such person. This does not reach Ridgway’s case. His former marriage was dissolved on account of his adultery, and his case is therefore not within the exception. The absolute prohibition of the statute applied to him, and the court below ruled correctly, that at no time after his marriage with Catharine Dobb, was he under our marriage laws capable of contracting a marriage.
 

 Though it is not material to the decision of this question in • this cause, it is not wholly inappropriate to say further, that the operation of this statute is not harsh or unreasonable in its application to persons in Ridgway’s condition. He was, until the instant when this statute took effect, incapable to marry by the provisions of the former law; that prescribed no limit to his incapacity during the life of his former wife. This statute continues the same state of incapacity, and imposes it upon all others against whom divorces are granted on the ground of their adultery. There has been no moment of time since he was divorced when marriage was lawful to him in this state, nor has
 
 *228
 
 the policy of the law, as evinced by the statutes, at any moment since his divorce, been changed.
 

 The incapacity of an adulterer divorced on that ground by our own courts, to marry again in this state during the life of the injured party, was grounded upon the views entertained by our legislature in respect to the marriage relation. They considered such a person unfit again to assume obligations which he had once disregarded. The extension of the same rule to persons divorced abroad, is based on just reason and dictated by the same views of policy out of which the original rule arose. Regarding guiltiness of adultery as complete proof that the adulterous party was not fit to contract a new marriage, they determined to apply one rule to all persons so situated—to embrace all those within the prohibition of the law, to whom the reason applied upon which the prohibition was grounded. No question-of comity between states is presented, for by the universal practice of civilized nations, the permission or prohibition of particular marriages of right belongs to the country where the marriage is to be celebrated. Nor can any one justly complain that a uniform rule is applied to all persons, whether strangers or citizens, in respect to marriages to be contracted within the state.
 

 It is not necessary for us to consider what would have been the effect of a marriage celebrated out of this state. No such question was presented in the case.
 

 The judgment of the superior court should be affirmed.
 

 Gardiner, Ch. J., Denio, Parker and Allen, Js.. concurred.
 

 Edwards, J., was in favor of reversing the judgment.
 

 Ruggles, J., was absent, and Selden, J,, took no part in the decision.
 

 Judgment affirmed.