180 So. 577

OSOINACH et al. v. WATKINS et al.

2 Div. 109.

Supreme Court of Alabama.
April 14, 1938.

B. M. Miller, of Camden, for appellees.

Bonner & Bonner, of Camden, for appellants.

KNIGHT, Justice.

Dr. C. C. Watkins, late a resident citizen of Wilcox county, Ala., died on December 21, 1935, intestate, and on petition of Mrs. Viola Watkins letters of administration upon the estate of said decedent were issued to her from the probate court of said county. In her petition for letters, Mrs. Watkins claimed that she was the widow of Dr. Watkins, and it was upon this representation that letters of administration were issued to her.

Upon due and timely petition or bill the administration of the estate was re-

moved from the probate court to the circuit court, in equity, of Wilcox County.

The bill in this cause is filed by the mother of Dr. Watkins, and all of his brothers and sisters, except Nathan F. Watkins, a brother of deceased, and who is made a party defendant to the bill along with Mrs. Viola Watkins, individually, and as administratrix of the estate of Dr. Watkins.

We may here state that since the appeal was taken Mrs. Viola Watkins has died, and the cause has been revived, as to her individually, in the name of her executrix, Zolan C. Chapman, and in the name of Eulynne C. Osoinach as administratrix de bonis non of the estate of Dr. Watkins, deceased.

It is averred in the bill that the complainant Mrs. Ida P. Watkins is the mother, and the other complainants are brothers and sisters of the deceased, and constitute all the heirs at law and next of kin of the decedent, except the said Nathan F. Watkins.

It is also averred that the said Viola Watkins was not the widow of the said decedent, and therefore was not entitled to any homestead rights, dower, or distributive share in the estate of said decedent.

It is charged that the said Viola Watkins was, at the time of her reputed marriage to Dr. Watkins, the surviving widow of Dr. R. Z. Chapman, a blood uncle of the deceased, and that three children were born of this marriage, and that these children are still living.

It is further charged in the bill that Dr. Watkins and Mrs. Viola Watkins, then Viola Chapman, well knowing the relationship existing between them, and that the laws of Alabama inhibited, under severe penalty, their intermarriage, for the purpose of evading such law, did go from their domicile in Alabama to the city of Atlanta, in the state of Georgia, and did there intermarry. That within a few days after their marriage, they returned to their Alabama domicile, and lived together as man and wife until the death of Dr. Watkins in 1935.

Complainants charge in their bill that this marriage was repugnant to the incest statutes of Alabama, and contrary to the established public policy of the state of Alabama, as disclosed by the statutes and laws of said state, and was, therefore, null and void in Alabama.

Among other matters, the bill prayed that the said marriage of Dr. Watkins and the said Viola Watkins be "declared and decreed" void ab initio, that it be declared repugnant to the pronounced public policy of the state of Alabama, and contrary to the positive laws of said state, and that by said marriage the said Viola Watkins acquired no property rights in the estate of said decedent.

The respondent Viola Watkins, individually and as administratrix of the estate of Dr. Watkins, deceased, demurred to the bill as a whole, and to that phase of the bill which seeks to have the marriage of Dr. Watkins and the said Viola Watkins decreed to be "null and void ab initio and to adjudicate the property rights" of the parties. The main ground relied on is that the bill in this respect is without equity.

The question here presented, therefore, involves the validity of the marriage of Dr. Watkins to the respondent Viola Watkins, and this is the only question really presented by the record. It is not contended that the laws of the state of Georgia, where the marriage was consummated, prohibited the intermarriage of a man and woman occupying the relationship which existed by affinity between these two spouses. We must assume that the laws of Georgia permitted the nephew to marry the widow of his deceased uncle, as it is averred that the marriage occurred in that state, and the bill nowhere avers that a marriage between persons so related was contrary to any law of said state.

It is a general rule of law that a marriage valid where celebrated is valid everywhere. But this general rule, like other rules of law, is not without its exceptions. Of course, a marriage which is contrary to the law of nature as generally recognized in Christian countries is void everywhere, and so a marriage which the law-making power has declared void, either in express terms or by necessary implication, shall not be allowed any validity. Pennegar and Haney v. State, 87 Tenn. 244, 10 S.W. 305, 2 L.R.A. 703, 10 Am.St.Rep. 648.

Section 8991 of the Code provides: "The son must not marry his mother or stepmother, or the sister of his father or mother, or the widow of his uncle. The brother must not marry his sister or half-sister, or the daughter of his brother or half-brother, or of his sister or half-sister. The father must not marry his daughter or grand-

daughter, or the widow of his son. No man shall marry the daughter of his wife, or the daughter of the son or daughter of his wife; and all such marriages are hereby declared incestuous."

Section 4522 of the Code provides: "If any man and woman, being within the degrees of consanguinity or relationship within which marriages are declared by law to be incestuous and void, and knowing of such consanguinity or relationship, intermarry, or have sexual intercourse together, or live together in adultery, each of them must, on conviction, be imprisoned in the penitentiary for not less than one nor more than seven years."

These two sections of the Code were first adopted in substantially their present form in 1852, appearing in the Code of 1852 as sections 1942 and 3234.

When Alabama was a part of the Mississippi Territory, the Legislative Council and House of Representatives of the Mississippi Territory enacted a law regulating the solemnization of marriages, the eighth section of which is as follows: "That if any person shall marry within the following degrees; that is to say—if the son shall marry his mother or step-mother, the brother his sister, the father his daughter, or his daughter's daughter; or if the son shall marry the daughter, begotten, and born of his step-mother; or his aunt, being his father's or mother's sister; or marry his uncle's widow; or if the father shall marry his son's widow; or if any man shall marry his wife's daughter, or his wife's son's daughter, or his wife's daughter's daughter; every person or persons so unlawfully married, shall be prosecuted by indictment; and on conviction shall be fined, not exceeding five hundred dollars; to the use of the territory. And the court, on conviction as aforesaid, shall moreover declare such marriage null and void, to all intents and purposes; and may at their discretion, cause the parties so separated, to enter into a recognizance with security, that they will not cohabit thereafter: Provided that nothing herein contained shall be so construed as to render illegitimate the issue of any such marriage, begotten before the same is so annulled." Mississippi Territorial Statute (1807), pp. 368, 371.

Thus it will be seen that from the earliest days of Alabama as a state there have existed here laws defining the degree of relationship, both of consanguinity and affinity, within which marriages are prohibited as being incestuous, and by necessary implication, void. By these laws, as early as 1805, the nephew was prohibited from marrying the widow of his uncle. Such a marriage was declared incestuous, and by this territorial act, the parties marrying in violation thereof were subject to indictment, and, upon conviction, subject to a fine of not exceeding $500, to the use of the territory. Since 1852, the violation of the statute has been made a felony, with punishment from one to seven years.

It is further to be noted that the territorial act was not as broad in its terms, nor as severe in punishment, as is provided in the Code of 1852.

Section 4522 of the Code not only makes it a felony for a man and woman, being within the prohibited degrees of consanguinity or affinity, to intermarry, but it also makes it a felony for them to have *sexual intercourse, or live together in adultery.*

■■ It cannot be argued, with any degree of plausibility, that marriages between persons within the prohibited degrees of relationship are not by the incest statutes of Alabama declared to be *incestuous* and *void.* Sections 8991 and 4522 of the Code stand in pari materia, and must be construed together. So construed, we must and do hold that marriages prohibited by section 8991 are absolutely void, void ab initio.

Judge Goldthwaite, in writing for this court in the case of Wall v. Williamson, 8 Ala. 48, made the following observation, with respect to the validity of marriages generally: "The general rule upon this subject is, that a marriage, valid at the place where contracted, is deemed to be valid everywhere else. Story Confl. of Laws, 77, §§ 79, 103, 113, a. It is said by the same author, that the most prominent, if not the only exceptions to this rule, are those marriages, involving polygamy and incest. Ib. § 113, a, 114.

"These, the learned author says, Christianity is understood to prohibit, and therefore no Christian Country would recognize polygamous, or incestuous marriages."

Whether the term "incestuous" as employed in that case refers to marriages between persons standing in such close blood relationship as are incestuous according to the generally accepted opinion of Christendom, we need not stop to determine.

The statute not only prohibits the intermarriage of persons standing in relationship of the parties to the marriage under con-

sideration in this case, but it also prohibits any act of sexual intercourse between them. It not only condemns such marriage and intercourse, but also, by unescapable implication, if not in terms, declares such marriages to be void.

Chief Justice Brickell, in the case of Beggs v. State, 55 Ala. 108, made the following observation with reference to incestuous marriages: "When the different parts of this article are compared, the intention of the legislature seems unmistakable. Incestuous marriages are prohibited—are void ab initio; no subsequent act of the parties can affirm, or impart to them validity. Not only are they prohibited, but those entering into them incur severe penalties. R.C. § 3601. There is no prohibition of the union of parties not of the requisite age, and no penalty imposed on them for forming the union. The incestuous marriage contravenes the voice of nature, degrades the family, offends decency and morals, and is absolutely interdicted. * * * If it had been intended to declare void the marriage of a person not of the requisite age, the intention would have been expressed in terms equivalent to those employed when incestuous marriages are prohibited." While possibly this statement of the great Chief Justice may not have been necessary to a decision of the case then before the court, it was at least a warning to those who might, in the future, be inclined to disregard the law, or undertake to evade its prohibitions. Dictum possibly, but of the highest authority.

In the case of Smith v. Goldsmith, 223 Ala. 155, 134 So. 651, 653, it was observed: "The general rule [that the validity of a marriage is determined by the law of the place where it was contracted] has its exceptions, one of incestuous marriages noted in the foregoing quotation, and others heretofore adverted to of polygamy, miscegenation *and where otherwise contrary to some positive statute or pronounced public policy of the state.*" (Italics supplied.)

In Corpus Juris, Vol. 38, § 3, p. 1276, the rule as what law governs in determining the validity of marriage is thus stated: "The general rule is that validity of a marriage is determined by the law of the place where it was contracted; if valid there it will be held valid everywhere, and conversely if invalid by the lex loci contractus, it will be held invalid wherever the question may arise. An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or *otherwise contrary to its positive laws.*"

And in same volume of Corpus Juris, at page 1292, § 30, the author of the text says: "So also a statute making the prohibited marriage a felony is generally held to render such pretended marriage void ab initio."

In the case of Arado v. Arado, 281 Ill. 123, 117 N.E. 816, 818, 4 A.L.R. 28, it was said: "Incest was not indictable at the common law, but was punished by the ecclesiastical courts as an offense against good morals, but by the statute it is punishable by imprisonment in the penitentiary. It would be contrary to reason to say that an act which is criminal can be valid for any purpose, or that a marriage contracted by persons incapable of entering into the contract can have any validity."

In Re Wilbur's Estate, 8 Wash. 35, 35 P. 407, 40 Am.St.Rep. 886, the court held that the general rule that lex loci contractus is controlling as to the validity of the marriage is subject to an exception in case the marriage is prohibited *either by the statute* or those laws of morality and decency which make it against the natural law of civilized nations for two persons to marry, and in such a case it is vain for them to go beyond the domicile to engage in a contract of marriage for the purpose of avoiding the prohibition.

The case of Locklayer v. Locklayer, 139 Ala. 354, 35 So. 1008, involved the marriage attempted to be consummated between a negro man and a white woman. This court held that such an attempted marriage was abortive and void, being in violation of the policy declared by section 5096, section 5001, present Code, of the Code then in effect.

In State v. Bell, 7 Baxt., Tenn., 9, 12, 32 Am.Rep. 549, it was held that the marriage of a white man and a negro woman in Mississippi, according to the law of which it was valid, would not be recognized as valid in Tennessee so as to protect the parties from prosecution for living in adultery.

The author of the notes to the case of Hills v. State of Nebraska, reported in 57 L.R.A. p. 155, after an exhaustive review of the adjudged cases bearing upon the question involved in this case, says: "The conclusion with reference to incestuous marriages seems to be that the marriage is, in the first instance, to be tested by the lex loci; if it meets that test, it may still be held

invalid because incestuous by the common consent of Christendom, as previously explained; and if valid by the lex loci and not incestuous according to the general consent of Christendom, it may still be held invalid because contrary to the distinctive national policy of the forum as evidenced by a municipal law declaring such marriages incestuous. The condemnation of such a marriage, as contrary to the distinctive national policy of the forum, is more probable if the parties were, at the time, domiciled at the forum, but it is not apparent why the court might not take the view that such policy required the condemnation of marriages between persons not domiciled at the forum at the time of its celebration, but who subsequently became domiciled therein."

■ The Legislature is fully competent to declare what marriages shall be void in its own state, notwithstanding their validity in the state where celebrated, whether contracted between parties who were in good faith domiciled in the state where the ceremony was performed, or between parties who left the state of domicile for the purpose of avoiding its statute, when they come or return to the state. Pennegar and Haney v. State, supra. This right in the Legislature is generally conceded by all the courts which have pronounced upon the subject. Van Voorhis v. Brintnall, 86 N.Y. 18, 40 Am.Rep. 505; State v. Shattuck, 69 Vt. 403, 38 A. 81, 40 L.R.A. 428, 60 Am.St.Rep. 936; Lanham v. Lanham, 136 Wis. 360, 117 N.W. 787, 17 L.R.A., N.S., 804, 128 Am.St.Rep. 1085.

■ We conclude that the marriage of Dr. Watkins to Mrs. Viola Watkins, though consummated in the state of Georgia, and legal in that state, was prohibited by positive statutes of this state, sections 8991 and 4522, Code of 1923; that their subsequent cohabitation in this state was unlawful, and subjected them to indictment, and conviction of a felony, punishable by imprisonment in the penitentiary, of this state for a period from one to seven years. We are also of the opinion and so conclude that said sections 8991 and 4522 express unmistakably the decided state policy not to sanction or give effect to a marriage between persons within the degree of relationship declared therein to be incestuous and void, no matter where such marriage may have been contracted. Such a marriage must be pronounced void ab initio.

■ It is insisted, however, by appellant that the marriage having been consummated in Georgia, and there legal, was legal everywhere, but if this were not so, that at most the marriage was voidable only in Alabama, and not having been avoided during the lifetime of Dr. Watkins, no attack could be made on it thereafter. This would possibly be the case, if the marriage was only voidable, but it is our conclusion that the marriage was not simply voidable in this state but absolutely void.

■ The attempted marriage being null and void conferred no property rights upon Mrs. Watkins, Barfield v. Barfield, 139 Ala. 290, 35 So. 884; Sibley v. Kennedy, 224 Ala. 354, 140 So. 552.

■ It is also universally held that a marriage which is null and void may be attacked after the death of either or both of the parties. Sothern v. United States, D.C., 12 F.2d 936; In re Gregorson's Estate, 160 Cal. 21, 116 P. 60, L.R.A.1916C, 697, Ann.Cas.1912D, 1124; Williams v. Williams, 83 Colo. 180, 263 P. 725, 57 A.L.R. 127; Bell v. Bennett, 73 Ga. 784; Williams v. McKeene, 193 Ill.App. 615; Wiley v. Wiley, 75 Ind.App. 456, 123 N.E. 252; Jenkins v. Jenkins' Heirs, 2 Dana, Ky., 102, 26 Am.Dec. 437; Inhabitants of Unity v. Belgrade, 76 Me. 419; White v. Williams, 159 Miss. 732, 132 So. 573, 76 A.L.R. 757; Guthery v. Bell, 206 Mo.App. 570, 228 S.W. 887; Hayes v. Rollins, 68 N.H. 191, 44 A. 176; Cropsey v. Ogden, 11 N.Y. 228; Heath v. Heath, 25 Ohio N.P.N.S., 123; Fearnow v. Jones, 34 Okl. 694, 126 P. 1015, L.R.A.1916C, 720; Keys v. Norris, 27 S.C.Eq. 388, 6 Rich. Eq. 388; Oldham v. McIver, 49 Tex. 556; Bowers v. Bowers, 31 S.C.Eq. 551, 10 Rich. Eq. 551, 73 Am.Dec. 99; Wiser v. Lockwood's Estate, 42 Vt. 720; Harrison v. State, 22 Md. 468, 85 Am.Dec. 658.

It remains only to be said that the decree of the circuit court, in equity, is in accord with the foregoing views, and is due, therefore, to be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN, and FOSTER, JJ., concur.