# Staunton

MARTHA TOLER V. OAKWOOD SMOKELESS COAL CORPORATION.

September 13, 1939.

Record No. 2135.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

426

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the appellant.

*Bandy & Bandy,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This is an appeal from a decision of the Industrial Commission of Virginia, which dismissed the claim of the appellant, Martha Toler, for compensation for the death of her alleged husband, Raymond Toler. Raymond Toler died on April 29, 1938, as a result of injuries arising out of an accident to him in the course of his employment by the Oak-

wood Smokeless Coal Corporation, on the 14th day of April, 1938, in Buchanan county, Virginia.

The facts were not in dispute before the Commission. As stated by Commissioner Nickels, they are as follows:

"The record shows that claimant was married to J. M. Lawson in the year 1927, and that she lived with him for a period of five and one-half years. She separated from said Lawson and resided at various places thereafter. About four years after her separation from Lawson she married Raymond Toler, the deceased. She was married to him in Boone County, West Virginia, on March 27, 1937. Thereafter she and her second husband came to Virginia on April 14, 1937, where they had resided until the date of the foregoing fatal accident.

"The evidence of claimant shows that Raymond Toler, her last husband, had seen a newspaper article wherein it was related that her former husband, J. M. Lawson, had been killed in an automobile accident; that she had not instituted any divorce proceedings against her former husband, J. M. Lawson, and, so far as she knew, he had not instituted divorce suit against her; that the last marriage was solemnized in the belief that her former husband was dead. The record further shows this information to be incorrect, because witnesses were introduced who knew the said J. M. Lawson and who testified that he was still alive and a resident of the State of West Virginia."

The sole question for our decision is whether the claim of Mrs. Toler to be the lawful widow of Raymond Toler, and as such entitled to compensation provided by the law of Virginia for the widow of a deceased employee, shall be determined under the laws of West Virginia, the place of the celebration of her second marriage; or under the laws of Virginia, the forum State, and the residence of herself and Toler at the time of the latter's accident and death.

The precise question here presented has never been decided by this court; that is, no case has here been decided touching the validity of a marriage in another state, between citizens of that state, where such marriage, though pro-

hibited, is made void only from the time it may be so declared by a decree of nullity, and the parties so married afterwards came to Virginia, where the marriage between them is by statute declared absolutely void, and there resided together as man and wife.

An examination of the numerous cases bearing upon the subject of the validity of foreign marriages, especially as regards the essentials of marriage and the capacity of parties, discloses an amazing and perplexing diversity of judicial determination. As interesting as it may be to review those cases, we cannot, within the scope of this opinion, undertake to enter into a discussion of the varying factors and circumstances involved in a consideration of them. A mere reading of the cases and the authorities therein cited will direct the exploring investigator into a wide field of conflict of laws and opinions. The question before us must be settled upon general principles, and governed by our own statutes.

The general rule throughout the civilized world is that the law of the place of its celebration governs as to the form and ceremonies incident to marriage. Thus arises the often cited rule that a marriage valid where celebrated is valid everywhere. But to this rule there are two well recognized exceptions, as universal as the rule itself, namely: (1) Marriages deemed contrary to the laws of nature as generally recognized in Christian countries, such as polygamous and incestuous marriages; and (2) marriages positively forbidden by statute because contrary to local public policy. *Kinney* v. *Commonwealth,* 30 Gratt. (71 Va.) 858, 32 Am. Rep. 690; *Greenhow* v. *James' Ex'r,* 80 Va. 636, 56 Am. Rep. 603; *Heflinger* v. *Heflinger,* 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088; Long on Domestic Relations, chapter 6, Conflict of Laws; Minor, Conflict of Laws, page 160, *et seq.*; Story on Conflict of Laws (8th Ed.) page 188, *et seq.*; Bishop on Marriage, Divorce and Separation, page 359, *et seq.*; Tiffany on Persons and Domestic Relations, page 46; 12 Corpus Juris, Conflict of Laws, section 43.

We are not concerned with the form and ceremony of the celebration of the marriage in the instant case. We are confronted with the question of the capacity of one of the parties to contract a marriage in another state, which will be binding and lawful in Virginia, and out of which relation a benefit may be claimed under a Virginia statute.

▮▮ Marriage is very properly regarded as the foundation of human society. Every state in the Union has its own peculiar laws regulating marriage and the effect of the marriage contract upon the parties and their property. Every state has the power to determine who shall assume or occupy the matrimonial relationship within its borders. Unfortunately, there is no great uniformity in these laws, except that they are designed to promote public morality and the moral and physical development of the parties. The control and regulation of marriage for this useful purpose is left to the states and not to the federal government. In this control and regulation, the states are fully sovereign and are foreign as to each other. *Pennegar and Haney* v. *State,* 87 Tenn. 244, 10 S. W. 305, 10 Am. St. Rep. 648, 2 L. R. A. 703; Long on Domestic Relations, chapter 6, Conflict of Laws.

▮▮ One state, however, cannot force its own marriage laws, or other laws, on any other state, and no state is bound by comity to give effect in its courts to the marriage laws of another state, repugnant to its own laws and policy. Otherwise, a state would be deprived of the very essence of its sovereignty, the right of supremacy within its own borders. Such effect as may be given by a state to a law of another state is merely because of comity, or because justice and policy may demand recognition of such law. Such recognition is not a matter of obligation. Minor, Conflict of Laws, chapter 1; 11 American Jurisprudence, Conflict of Laws, sections 4, 5, 6 and 126.

It is in recognition of the principle of comity or of justice, that, in testing the validity of a foreign marriage, the law of the place of the celebration of the marriage, as applied to the marriage in question, is usually adopted as a

law of the forum, unless such law is contrary and opposed to the statutes or public policy of the forum state.

"The Legislature is fully competent to declare what marriages shall be void in its own state, notwithstanding their validity in the state where celebrated, whether contracted between parties who were in good faith domiciled in the state where the cermony was performed, or between parties who left the state of domicile for the purpose of avoiding its statute, when they come or return to the state. * * * This right in the Legislature is generally conceded by all the courts which have pronounced upon the subject." *Osoinach, Administrator, etc.* v. *Watkins,* 235 Ala. 564, 180 So. 577, 581, 117 A. L. R. 179, with cases cited and annotation on page 186.

The pages of the reports and textbooks are replete with statements of the general rules, exceptions, and qualifications, which apply to the varying circumstances under which conflicts between *lex fori* and the *lex loci* have arisen. In our citations and references, we shall endeavor to confine ourselves as closely as possible to the peculiar circumstances of this particular case.

Polygamy is now prohibited in all of the States and territories of the American Union. It is repugnant to the moral sense of Christendom, contrary to public policy, and is made criminal by statutes. In Virginia and West Virginia, the offense of bigamy is punishable as a felony. Virginia Code 1936, section 4538; West Virginia Code 1937, section 6056.

In Virginia: "All marriages between a white person and a colored person, and all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, shall be absolutely void, without any decree of divorce, or other legal process." Virginia Code 1936, section 5087.

In West Virginia: "All marriages between a white person and a negro; all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living; * * * shall be void from the time they

are so declared by decree of nullity." West Virginia Code 1937, section 4701.

It is material to observe the clear distinction made by leading authorities between marriages made voidable and those declared void. Keezer on Marriage and Divorce, at page 16, says: "A void marriage confers no legal rights, and, when it is determined that the marriage is void, it is as if no marriage had ever been performed. * * * A voidable marriage differs from a void marriage in that it may be afterwards ratified by the parties and become valid and usually is treated as a valid marriage until it is decreed void."

"A void marriage is a mere nullity, and its validity may be impeached in any court whether the question arises directly or collaterally, and whether the parties be living or dead." Schouler on Marriage, Divorce, etc. (6th Ed.) Vol. II, page 1353.

"A marriage is termed void when it is good for no legal purpose and its invalidity may be maintained in any proceeding, in any court, between any parties, whether in the lifetime or after the death of the supposed husband or wife, and whether the question arises directly or collaterally." Bishop on Marriage, Divorce, etc., Vol. I, page 107.

"The rule of the common law * * * is, that the canonical impediments such as consanguinity, affinity and impotence, render the marriage voidable, the civil, such as a prior marriage, idiocy and the like, usually render it void," except as modified by statute. Bishop, *supra,* page 113.

The Virginia statute, section 5087, follows the common law. It not only declares the subsequent marriage of a person having a lawful husband or wife living void *ab initio,* but also provides that no legal process is required to establish its nullity. The language of the statute is so clear, distinct and express that it is difficult to imagine more emphatic disapproval of a bigamous union.

The West Virginia Code of 1868 radically changed the common law and the law of Virginia, as formerly applied in that territory, by making bigamous marriages "void from

the time they are so declared by a decree of divorce or nullity." West Virginia Code 1868, chapter 64, section 1. By a subsequent amendment, the words "of divorce" were omitted from the last sentence of the statute. *Sledd* v. *State Compensation Commissioner et al.,* 111 W. Va. 509, 163 S. E. 12, 80 A. L. R. 1424.

In the case of *True* v. *Ranney,* 21 N. H. 52, 53 Am. Dec. 164, a marriage performed in Vermont was annulled by the New Hampshire court, on the ground of the imbecility of one of the parties at the time of the marriage. The opinion holds that the general rule that the *lex loci contractus* determines the validity of marriage contracts in general, prevails only when not in opposition to the religion, morality, or municipal institutions of the country in which it is sought to be applied.

In *State* v. *Bell,* 7 Baxt. (66 Tenn.) 9, 12, 32 Am. Rep. 549, and *Jackson* v. *Jackson,* 82 Md. 17, 33 A. 317, 34 L. R. A. 773, the same principle was fully approved.

In *United States* v. *Rodgers* (D. C. Pa.), 109 F. 886, where a marriage was celebrated in Russia between an uncle and his niece, such a marriage being lawful there, but void if celebrated in Pennsylvania, the court held that a marriage absolutely prohibited by the laws of the forum cannot be tolerated in its territory, although it may have been entered into before the parties settled therein.

In 5 R. C. L., under the title of "Marriage," page 995, it is said:

"Although marriage, like other civil contracts, must be regulated by the *lex loci contractus,* it is not every marriage which may be valid by the law of the place where it was consummated that will be recognized as legal everywhere else. Every sovereign state is the conservator of its own morals and the good order of its society. Consequently, where marriages between certain persons are incestuous or polygamous, or otherwise prohibited by the public policy and law of one jurisdiction, they will not be deemed valid therein, though they are deemed valid in the state or place

where they were celebrated, and though the parties to the marriage were there domiciled."

Mr. Minor, in his Conflict of Laws, page 160, says: "If one having a consort living and undivorced marries again, though the subsequent marriage should take place in a barbarous state where dual marriages are valid, it will not be upheld in any civilized country. It is *contra bonos mores.*"

In the case of *Sledd* v. *State Compensation Commissioner et al., supra,* where the facts are somewhat similar to those in the instant case, the court held that under the statutes of West Virginia, the widow of a deceased employee may not be denied compensation on the ground she had another husband living, undivorced, at the time of her marriage with the employee, in the absence of a judicial determination that the second marriage was bigamous and void. The opinion is based upon the language of the West Virginia statute making such marriage voidable but not void.

The case of *Cornwall* v. *Cornwall,* 160 Va. 183, 168 S. E. 439, illustrates the effect of the distinction applied in Virginia, between void and voidable marriages. There one of the parties was alleged to be insane at the time of the marriage, a ground making the marriage not void, but merely voidable. Virginia Code 1936, section 5088. No decree declaring such marriage void having been entered, although suit to that end had been brought, the marriage was held valid.

The statutes and public policy of Virginia as reflected by legislative pronouncement and judicial construction, are emphatically opposed to the recognition of the validity of a bigamous union.

There can be no question of the public policy of Virginia with reference to miscegenation. *Kinney* v. *Commonwealth, supra; Greenhow* v. *James' Ex'r, supra.*

The punishment in this State for bigamy is not less than three nor more than eight years in the penitentiary, while the punishment for miscegenation is for not less than one year nor more than five years. Virginia Code 1936, sections

4538, 4546. If the measure of punishment reflects the degree of abhorrence of an offense, then bigamy is the more seriously regarded,—more seriously, perhaps, because of the likelihood of its occurrence and consequent disruption of the morals of society. All marriages in violation of either statute are declared void without judicial process or determination by one and the same subsequent statute, Virginia Code 1936, section 5087.

We do not question the law of West Virginia as construed by its court. The judicial proceedings of that State are entitled to full faith and credit. We are not here, however, dealing with the faith and credit to be given judicial decrees properly established. We have here an attempt to apply the law of West Virginia in the courts of Virginia, in substitution for the law of Virginia. The law in question is repugnant to our statutes, and its substitution for our statutes would be an invasion of the sovereignty of this State.

The fact that the second marriage of Mrs. Toler was made in good faith, under a reasonable belief that her former consort was dead, may relieve her from a successful prosecution for bigamy, but it will not render a void marriage valid. There is no qualification affecting the absolute nullity, in Virginia, of a bigamous contract.

We conclude that the facts of this case bring it within the exceptions to the general rule of the validity of foreign marriages, in that the marriage of the appellant to Raymond Toler was both bigamous and contrary to our laws and public policy. The Virginia statutes do not recognize the appellant as the lawful widow of Raymond Toler.

We find no error in the order of the Industrial Commission, and, therefore, we affirm the same.

*Affirmed.*