This case originates from a petition filed by Jean Rickard for the probate of the last will and testament of her mother, Isephene Jo Haggard Trousdale, and a subsequent petition filed by Gilbert Leon Trousdale, claiming to be the surviving spouse of the decedent, for his elective share, exempt property, and homestead allowance.
The estate was removed to the circuit court on July 10, 1984, and proceeded to trial on the sole issue of whether a common law marriage existed between Gilbert Leon Trousdale and Isephene Jo Haggard Trousdale at the time of the latter's death. The circuit court entered a partial decree in favor of Mr. Trousdale on this issue, but reserved the other issues raised in the pleadings for future determination. Pursuant to Rule 54(b), A.R.Civ.P., the court directed entry of a final judgment, and this appeal followed.
Gilbert and Isephene were the parties to a ceremonial marriage in Tishomingo County, Mississippi, on September 11, 1976. At the time of the ceremony, however, Gilbert was already married to Bobbie Jean Trousdale.
There is no dispute that the ceremonial marriage between Gilbert and Isephene was null and void for bigamy. The question with which we are faced concerns the effect of Leon's divorce from Bobbie Jean, March 22, 1978, on the continued cohabitation of Leon and the deceased after that date.
On appeal, Ms. Rickard contends that the ceremonial marriage between her mother *Page 261 
and Leon did not ripen into a common law marriage when Leon's marriage to Bobbie Jean was dissolved, because Isephene could not consent to a common law marriage where the bigamy, though corrected, was intentionally concealed and never revealed to her.
In Campbell's Administrator v. Gullatt, 43 Ala. 57,69 (1869), the Court held that "a marriage good at the common law, is . . . a valid marriage in this State." A marriage at common law in Alabama requires the following:
 "[T]here must be a present agreement or mutual understanding to enter into the marriage relationship, the parties must be legally capable of making the contract of marriage, and there must follow cohabitation as man and wife and a public recognition of that relationship."
Luther v. M M Chemical Co., 475 So.2d 191, 193
(Ala.Civ.App. 1985).
It is the well-settled rule that if parties in good faith marry at a time when in fact a legal impediment exists to their marriage, and they continue to live together as husband and wife after the removal of the impediment to their lawful union, the law presumes a common law marriage. Boswell v.Boswell, 497 So.2d 479 (Ala. 1986), King v. King,269 Ala. 468, 114 So.2d 145 (1959); Barnett v.Barnett, 262 Ala. 655, 80 So.2d 626 (1955); Hill v.Lindsey, 223 Ala. 550, 137 So. 395 (1931).
In the case at bar, Leon and Isephene continued to live together as husband and wife after Leon obtained his divorce from Bobbie Jean. Testimony at trial showed that the public recognized Leon and Isephene as husband and wife, and that Isephene believed until her death that she was legally married to Leon. Clearly, the evidence supports the presumption of a common law marriage between Leon and Isephene.
To rebut the presumption of a common law marriage, Ms. Rickard contends that Leon intentionally concealed his prior marriage from Isephene, and, thus, that the necessary element of consent was missing. In a case with similar facts, the Florida Supreme Court held as follows:
 "The marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is generally held to be absolutely void, and not merely voidable, and, being a nullity, no judicial decree is ordinarily necessary to avoid same. But where an absolutely void bigamous marriage is innocently contracted by one of the parties in ignorance of the existing impediment, and as a result of fraud and deceit practiced upon him by the opposite party, the fact that such void marriage has subsequently ripened into a presumptively valid common-law marriage through continued cohabitation of the parties after the disbarring prior marriage has been dissolved . . . should not bar or preclude the innocent party to such fraud from treating the resultant common-law marriage as one that is voidable within a reasonable time after discovery of the fraud practiced upon him, and thereupon having a judicial annulment of same, such as was sought in this case."
Jones v. Jones, 119 Fla. 824, 832, 161 So. 836, 839
(1935).
In Osoinach v. Watkins, 235 Ala. 564, 180 So. 577
(1938), the court held that a void marriage may be attacked after the death of one or both of the parties by the personal representative of a deceased spouse; however, if the marriage is merely voidable the action must be brought during the lifetime of both spouses. See also, Abel v. Waters,373 So.2d 1125 (Ala.Civ.App.) cert. denied, 373 So.2d 1129
(Ala. 1979).
Consequently, even if we were to assume that Leon fraudulently concealed from Isephene the fact of his prior marriage to Bobbie Jean, which we are not at liberty to do since fraud was neither alleged in the pleadings nor proved at trial, his fraud would operate only to make the common law marriage voidable, and a voidable common law marriage cannot be attacked after the death of one of the parties to the marriage. *Page 262 
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.