COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Ortiz
Argued at Fairfax, Virginia

ALI KAHIL

                                                         MEMORANDUM OPINION[*] BY
v.       Record No. 1830-23-4                        JUDGE GLEN A. HUFF
                                                      DECEMBR 3, 2024
VIRGINIA DEPARTMENT OF VITAL
  RECORDS, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Brian S. Szmak (Potter & Murdock, P.C., on briefs), for appellant.

(Jason S. Miyares, Attorney General; Robert B. Bell, Deputy
Attorney General; Allyson K. Tysinger, Senior Assistant Attorney
General, on brief), for State Registrar of Vital Records. State
Registrar of Vital Records submitting on brief.

No brief or argument for appellee Thomas Summakie.

Appellant, Ali Kahil ("son"), appeals the Loudoun County Circuit Court's ("circuit

court") judgment denying his petition to amend his deceased father's, Abdul Kahil ("decedent"),

death certificate. Son argues the circuit court relied on an incorrect interpretation of the State

Registrar's position regarding amendments to the death certificate. He also contends that the

circuit court erred by declining to find that decedent's marriage to the spouse listed on the death

certificate was void as a bigamous marriage. For the following reasons, this Court reverses the

circuit court's judgment and remands for further proceedings consistent with this opinion.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

In April 1990, decedent married Shelly Schwartz in Alexandria, Virginia. Son is the only child of Schwartz and decedent's marriage. In August 2004, a Syrian marriage deed was issued between decedent and Lina Kroma.[1] In April 2011, the City of Alexandria Circuit Court granted decedent and Schwartz a divorce. In November 2011, decedent died in Virginia. The State Registrar issued and signed a death certificate on December 2, 2011; the "name of spouse" space on the certificate was left blank, indicating decedent was divorced. The death certificate listed "Shelly Kahil [ex-]wife" as the source of information.

In 2012, decedent's friend, Thomas Summakie, contacted the funeral director and requested an amendment to decedent's death certificate. The funeral director wrote a letter to the Loudoun County Office of Vital Records identifying several changes to be made to decedent's death certificate. On March 27, 2012, the registrar issued a second death certificate indicating that decedent was "married" to "Lena Kroma." In addition, the spelling of the names of decedent's parents had been changed, and the name of the informant was now listed as "multiple sources."

In 2022, son petitioned the circuit court under Code § 32.1-269.1(E) for an order compelling the State Registrar to amend decedent's death certificate by removing Kroma as decedent's spouse and changing his marital status to "divorced."[2] Son contended that decedent's marriage to Kroma was bigamous and therefore void as a matter of law. In addition, son requested the spelling of his grandparents' names be changed and that the informant be changed from "multiple sources" to "Ali Kahil."

_____

[1] Kroma's name is also spelled "Lena Kroma" elsewhere in the record.

[2] Code § 32.1-269.1 outlines the procedures and requirements for amending death certificates. Generally, to change "the marital status of the deceased" on a death certificate more than 45 days after the certificate is filed, an "immediate family member" may petition the circuit court "of the county or city in which the decedent resided as of the date of his death . . . to amend [the] death certificate." Code § 32.1-269.1(E).

- 2 -

Summakie filed an answer to son's petition, alleging that decedent had married Kroma in Syria in August 2011, *after* he had divorced Schwartz. As supporting evidence for his assertion, Summakie submitted a translated 2013 letter from a Syrian judge stating that a court decree issued in an earlier lawsuit had "confirm[ed] the marriage between" decedent and Kroma and that "such Marriage was celebrated . . . on August 4, 2011." The State Registrar of Vital Records also submitted an answer to son's petition, stating that it had "no objection to the entry of an appropriate Order by the [c]ourt to amend the death certificate as requested," provided the circuit court "receive[d] evidence to support the requested amendments." The State Registrar added, however, that "[t]he informant should only be changed if Ali Kahil was the sole person who provided the information for the creation of the death certificate."

On September 20, 2023, the circuit court held a hearing on son's petition. Abed Awad, an attorney specializing in the laws of Arab and Muslim countries, testified to the effect of Syrian family law on decedent's marital status. Awad explained that Syrian law permits polygamous marriages. Moreover, based on his review of Syrian legal documents involving the parties, including the 2004 Syrian marriage deed, Awad opined that decedent's 2004 marriage to Kroma was a valid marriage under Syrian law, even though he was already married to Schwartz at that time. Regarding the alleged 2011 marriage between decedent and Kroma after decedent divorced Schwartz, Awad believed the evidence of such marriage lacked credibility. In Awad's opinion, Kroma and decedent married in 2004, not 2011.

After hearing evidence and argument, the circuit court denied son's petition to amend decedent's death certificate. The circuit court summarized the State Registrar's position as "hav[ing] no objection to amending the death certificate provided that the individual who . . . was the source for the first certificate is the same person who was the source for the second." The circuit

court found, however, that "there was really no persuasive evidence" of the identity of the "multiple sources" listed on the second version of the death certificate.

Turning to the issue of decedent's marital status, the circuit court found that decedent married Kroma in 2004, rejecting Summakie's assertion that the parties married in 2011. The circuit court further found that decedent was still married to Schwartz at the time of his 2004 marriage to Kroma in Syria. The circuit court examined Code § 20-43, which renders "[a]ll marriages that are prohibited by law on account of either of the parties having a former spouse then living . . . absolutely void." Reasoning that the General Assembly "could have said all marriages" but chose the language all marriages "prohibited by law," the circuit court determined Code § 20-43 means "[i]t's not a bigamous marriage unless it's prohibited by law initially" or "unless grossly against public policy." The circuit court found that decedent's 2004 marriage to Kroma was not "grossly against public policy in Virginia" because at the time of his death, decedent had divorced Schwartz and had only one wife. Thus, the circuit court declined to hold decedent's 2004 marriage to Kroma void as a bigamous marriage because "in Syria, the [2004] marriage . . . was not prohibited by law."

This appeal followed.

## ANALYSIS

### I. Circuit Court's Interpretation of State Registrar's Position

In his first assignment of error, son argues that the circuit court incorrectly interpreted the State Registrar's position regarding amendments to decedent's death certificate. Son challenges the circuit court's finding that the State Registrar had "no objection to amending the death certificate provided that the individual who . . . was the source for the first certificate is the same person who was the source for the second." According to son, the State Registrar stated no

objection to son's requested amendments to the death certificate so long as the evidence supported the amendments.[3]

Because son challenges the circuit court's determination as to the State Registrar's position in her answer, "we ask whether [such factual determinations] 'are plainly wrong or without evidence to support [them].'" *Tel. Square v. 7205 Tel. Square, LLC*, 77 Va. App. 375, 403 (2023) (second alteration in original) (quoting *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021)). In her answer, the State Registrar stated she

> ha[d] no objection to the entry of an appropriate Order by the [circuit] Court to amend the death certificate as requested if the Court receives evidence to support the requested amendments. The informant should only be changed if [son] was the sole person who provided the information for the creation of the death certificate.

The circuit court understood this position to mean the State Registrar did not object "to amending the death certificate provided that . . . the person that was the source for the first certificate is the same person who was the source of the second certificate." This is a plainly wrong statement of the State Registrar's position. The State Registrar's answer did not contemplate who was seeking the amendment; rather she merely stated she had no objection so long as there was evidence to support the amendment. Insofar as she expressed any opinion, it was that the "informant" should only be changed from "multiple sources" if son is "the sole person provid[ing] the information for the creation" of the amended death certificate. Importantly, this concerns when a particular field should be changed; it is not saying the certificate should not be changed. Accordingly, this Court reverses the circuit court's erroneous finding as to the State Registrar's position and remands with instruction to proceed with the

---

[3] On appeal, the State Registrar maintains that she has no objection to appellant's petition to change the death certificate so long as evidence supports such amendment. She also states that she has no position as to whether decedent was married to Kroma at the time of his death.

interpretation that the State Registrar has no objection, so long as there is evidence to support the circuit court's decision.

## II. Validity of Decedent's 2004 Marriage to Kroma

In his second and third assignments of error, son argues the circuit court erred by declining to declare decedent and Kroma's marriage void as bigamous under Code § 20-43, despite its finding that decedent married Kroma while still married to Schwartz. Thus, he asserts the circuit court erred by denying his petition to amend decedent's death certificate by removing Kroma as the listed spouse. "[W]e review the trial court's statutory interpretations and legal conclusions *de novo*." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Navas v. Navas*, 43 Va. App. 484, 487 (2004)).

"The public policy of Virginia . . . has been to uphold the validity of the marriage status as for the best interest of society." *Porter v. Porter*, 69 Va. App. 167, 171 (2018) (alteration in original) (quoting *Levick v. MacDougall*, 294 Va. 283, 291 (2017)). "[T]hus, the presumption of the validity of a marriage ranks as 'one of the strongest presumptions known to the law.'" *Id.* (alteration in original) (quoting *Levick*, 294 Va. at 291). Generally, "[a] marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy." *Id.* at 172 (quoting *Kelderhaus v. Kelderhaus*, 21 Va. App. 721, 725 (1996)); *see also Farah v. Farah*, 16 Va. App. 329, 332 (1993) (holding "[a] marriage that is valid under the law of the state or country where it is celebrated is valid in Virginia, unless it is repugnant to public policy").

Virginia's long-held public policy, as expressed by statute, provides that "[a]ll marriages that are prohibited by law on account of either of the parties having a former spouse then living shall be absolutely void, without any decree of divorce or other legal process." Code § 20-43; *see also Kleinfield v. Veruki*, 7 Va. App. 183, 190 (1996) (holding that bigamous marriages are "contrary to

the laws of Virginia and [its] public policy").[4]  Indeed, "[t]here is no qualification affecting the absolute nullity, in Virginia, of a bigamous contract."  *Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 435 (1939).  The language of Code § 20-43 "is so clear, distinct and express that it is difficult to imagine more emphatic disapproval of a bigamous union."  *Id.* at 432 (interpreting a former version of the statute with nearly identical language).  Thus, unlike "voidable" marriages "that . . . may be afterwards ratified by the parties and become valid," a "void" marriage "confers no legal rights, and, when it is determined that the marriage is void, it is as if no marriage had ever been performed."  *Id.*  Consequently, void marriages may be "impeached in any court whether the question arises directly or collaterally, and whether the parties be living or dead."  *Id.*; *see also Levick*, 294 Va. at 300 (noting that a "void ab initio" marriage "can be challenged by any person, in virtually any proceeding, for any reason precisely because the transaction, in the eyes of the law, does not exist").

Here, son attempted to directly impeach decedent's marriage to Kroma as bigamous in a proceeding under Code § 32.1-269.1(E).  The circuit court, however, rejected that argument, reasoning that under Code § 20-43, "[i]t's not a bigamous marriage unless it's prohibited by law *initially*" or "unless *grossly* against public policy" and that this marriage was not initially prohibited because it was valid under Syrian law.  That holding misapplied Code § 20-43 and binding precedent.  "[T]he general rule that the *lex loci contractus* determines the validity of marriage contracts in general, prevails only when not in opposition to the religion, morality, or municipal institutions of the country in which it is sought to be applied."  *Toler*, 173 Va. at 433.  And well-established case law affirmatively establishes that bigamous marriages, wherever they occur

---

[4] This public policy against bigamous marriages is further reflected in Code § 20-38.1(1)'s prohibition on "marriage[s] entered into prior to the dissolution of an earlier marriage of one of the parties" and Code § 20-45.1(A)'s declaration that "[a]ll marriages that are prohibited by § 20-38.1 are void."

and regardless of their legality in that location, are void ab initio in the Commonwealth and thus never have any legal effect. In the "eyes of the law," *Levick*, 294 Va. at 300, "it is as if no marriage had ever been performed," *Toler*, 173 Va. at 432.

In *Toler*, for example, the Supreme Court examined the validity of a bigamous marriage under Virginia law but conditionally valid in West Virginia where the marriage took place. *Id.* at 428-29. After separating from, but not divorcing, her first husband a woman married a "second husband" in West Virginia. *Id.* at 428. West Virginia law at the time provided that bigamous marriages became void only "from the time they are so declared by decree of nullity." *Id.* at 431-32. When the woman attempted to recover workers' compensation benefits after her "second husband" died, the Supreme Court acknowledged "[t]he general rule . . . that the law of the place of its celebration governs as to the form and ceremonies incident to marriage" and noted that typically, "a marriage valid where celebrated is valid everywhere." *Id.* at 428-29. The Supreme Court emphasized, however, that "marriages positively forbidden by statute because contrary to local public policy" are an exception to this general rule. *Id.* at 429. Although the principle of comity usually requires that "the law of the place of the celebration of marriage" is used when determining the validity of a marriage formed elsewhere, "no state is bound by comity to give effect in its courts to the marriage laws of another state, repugnant to its own laws and policy." *Id.* at 430. Such a requirement "would be an invasion of the sovereignty of this State." *Id.* at 435. Thus, the Supreme Court declined to apply the law of West Virginia to determine the validity of wife's second marriage, held that wife's second marriage was void, and declined to legally recognize her as the decedent's widow entitled to benefits. *Id.*

Similarly, in *Hager v. Hager*, 3 Va. App. 415, 416-17 (1986), this Court held a bigamous marriage void despite a wife's argument that the marriage was presumptively valid under South Carolina law, where the marriage took place. This Court determined that even if wife's

interpretation of South Carolina law was correct, "the law of Virginia must be applied to determine the question of validity of the marriage within this state." *Id.* at 416.

Here, the disputed marriage took place in Syria, where polygamous marriages are permitted. As in *Toler* and *Hager*, Syrian law as to polygamous marriage is contrary to Virginia's well-established and emphatic public policy declaring bigamous marriages as void ab initio and, thus, as if they never existed. Accordingly, the circuit court erred by concluding that decedent's 2004 marriage to Kroma was not void within the Commonwealth because it was "initially" valid under Syrian law. Instead, decedent's marriage to Kroma was bigamous and therefore not recognized in the Commonwealth.

The circuit court further held that decedent's marriage to Kroma was not "grossly against public policy in Virginia" because at the time of his death decedent had divorced Schwartz and had only one wife. This too was error. No legal authority supports the circuit court's reasoning that the validity of decedent's bigamous marriage was redeemed by decedent divorcing his first spouse *after* the bigamous marriage took place. A bigamous marriage is "absolutely void" and, as stated above, "when it is determined that a marriage is void, it is as if no marriage had ever been performed." *Toler*, 173 Va. at 432. A void marriage cannot be made valid by the later actions of the parties, because "if the parties can subsequently ratify the marriage and give it legal effect, the marriage could not have been void from its commencement." *Kleinfield*, 7 Va. App. at 188.

### CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and remanded for entry of an order to amend the death certificate to reflect that the decedent was unmarried at the time of his death, as well as the source of the information, if appropriate.

*Reversed and remanded.*