McClurg *v.* Terry.

---

## McClurg *vs.* Terry.

<div style="float:right"></div>

1. A marriage ceremony, though actually and legally performed, when it was in jest, and not intended to be a contract of marriage, and it was so understood at the time by both parties, and is so considered and treated by

McClurg *v.* Terry.

them, is not a contract of marriage. Intention is necessary, as in every other contract.

2. The Court of Chancery has the power to declare a marriage void, when performed in jest, and where it was not intended to be a contract of marriage.

3. The legislative acts and the constitutional provision bearing on the subject, examined.

Argued on final hearing, upon pleadings and proofs.

*Mr. A. K. Brown,* for complainant.

*Mr. A. S. Jackson,* for defendant.

THE CHANCELLOR.

The complainant seeks to have the ceremony of marriage performed between herself and the defendant, in November, 1869, declared to be a nullity. The ground on which she asks this decree is, that although the ceremony was actually performed, and by a justice of the peace of the county, it was only in jest, and not intended to be a contract of marriage, and that it was so understood at the time by both parties, and the other persons present; and that both parties have ever since so considered and treated it, and have never lived together, or acted towards each other as man and wife. The bill and answer both state these as the facts of the case, and that neither party intended it as a marriage, or was willing to take the other as husband or wife. These statements are corroborated by the witnesses present. The complainant is an infant of nineteen years, and had returned late in the evening to Jersey City, from an excursion with the defendant and a number of young friends, among whom was a justice of the peace, and all being in good spirits, excited by the excursion, she in jest challenged the defendant to be married to her on the spot, he in the same spirit accepted the challenge, and the justice at their request, performed the ceremony, they making the proper responses. The ceremony was in the usual and proper form, the justice

doubting whether it was in earnest or in jest. The defendant escorted the complainant to her home, and left her there as usual on occasions of such excursions; both acted and treated the matter as if no ceremony had taken place. After some time the friends of the complainant having heard of the ceremony, and that it had been formally and properly performed before the proper magistrate, raised the question and entertained doubts whether it was not a legal marriage; and the justice meditated returning a certificate of the marriage to be recorded before the proper officer. The bill seeks to have the marriage declared a nullity, and to restrain the justice from certifying it for record.

Mere words without any intention corresponding to them, will not make a marriage or any other civil contract. But the words are the evidence of such intention, and if once exchanged, it must be clearly shown that both parties intended and understood that they were not to have effect. In this case the evidence is clear that no marriage was intended by either party; that it was a mere jest got up in the exuberance of spirits to amuse the company and themselves. If this is so, there was no marriage. On this part of the case I have no difficulty.

The question whether this court has jurisdiction in such case, or similar cases, to decree a marriage to be a nullity, is not so free from doubt. The fact of marriage can be determined by any court where the question arises, from a justice's court in a suit for goods furnished to the wife, to this court on a question of alimony and the legality of marriage, and the question whether the ceremony was in jest or earnest, could in such cases be determined. But the finding would only bind the parties to that suit. Another suit tried the next day between other parties might reach a different result, and the judgment in the first suit could not be received even as *prima facie* evidence in the subsequent suit. It could not nullify the marriage relation.

But here the proceeding is *in rem*, strictly so called; it is upon *the matter* of the marriage, to determine simply

whether such marriage exists, and not whether a debt or alimony is due, which depends upon the fact of the marriage. And when a determination is had in a proceeding *in rem*, it binds the whole world and not only the parties to it; it makes it a marriage or no marriage. Marriage itself is a proceeding *in rem,* and constitutes the parties man and wife; divorce is also, it dissolves an existing marriage. The grant of administration, and the judgments of the admiralty courts in cases of prize or maritime liens, are proceedings *in rem*, and change and vest the rights and the property concerned. And in all these cases strangers are bound by transactions at which they were not present, and proceedings to which they were not parties or privy. In England, the ecclesiastical courts had jurisdiction of marriage and matrimonial causes; they had power to declare a marriage void, and their judgment was final. These courts have never been established in this state. Under the colonial government, the governor was invested with the power of the ecclesiastical courts, so far as testamentary causes and marriage licenses were concerned. The first Constitution of the state declared the governor to be the Ordinary, and the present declares the Chancellor to be Ordinary. But the act of December 16th, 1784, like the existing act concerning the Prerogative Court, restrained the jurisdiction to the granting probate of wills and letters of administration and guardianship, and to disputes arising out of the same, with the addition of marriage licenses; and the Ordinary in New Jersey has never exercised jurisdiction in matrimonial causes. The act of 1794, (*Pat. Laws* 143,) gave to the Court of Chancery jurisdiction of "all causes of divorce," but added, as does the act now in force, "by this act directed and allowed." Neither act directs or authorizes a divorce or decree of nullity in case of a mere formal ceremony like this, or in case of a ceremony procured by fraud or compulsion. Until the present constitution was adopted, the legislature had and exercised the power of divorce, and declaring the marriage contract void. A statute for that purpose

operated *in rem*, and dissolved the relation. The Constitution took away that power and vested the chancery powers in the Chancellor. Among these powers was that of granting divorces as then established. A literal construction of these acts and constitutional provisions, would not seem to vest in this court the power of declaring marriages void, except in the cases specified, and yet a liberal construction, guided by what was evidently the design of these provisions, might extend the jurisdiction of this court to this class of cases. In every well ordered government it is proper that there should be some tribunal or power competent finally to determine the validity of so important a matter as marital relation, so that parties may know their obligations and rights, and that this should not be left to be determined differently by each court, where the question might incidentally arise. And when the power over this subject was taken from the legislature, it is fair to infer it was intended to be left with this court, upon which jurisdiction over most causes of divorce had been directly conferred.

In the state of New York, Chancellor Kent and Chancellor Sandford, both held, with statutes more restricted than that of New Jersey, that the power of declaring marriages void for fraud or force, was vested in the Court of Chancery. *Aymar* v. *Roff*, 3 *J. C. R.* 49; *Wightman* v. *Wightman*, 4 *J. C. R.* 343; *Ferlat* v. *Gojon*, 1 *Hopk.* 478.

And the Supreme Court of the state of Vermont, in *Clark* v. *Field*, 13 *Vt.* 460, on an appeal from chancery, in a well considered opinion delivered by Chief Justice Williams, held that the courts of chancery of that state had the power, without any direct delegation of it for that purpose, to declare a marriage procured by fraud and force to be void.

I am satisfied that this court has the power, and that this is a proper case to declare this marriage a nullity.