INEZ D. YSERN, an infant, by Agnes S. Ysern, her next friend, petitioner,

*v.*

GEORGE HORTER, defendant.

[Decided August 23d, 1922.]

1. A so-called voidable marriage, that is to say, a marriage which one of the parties during the lifetime of both has the option by a decree to have declared void *ab initio*, is, until such decree is made a valid marriage, rendering each party incapable of marrying a third party, and any attempted marriage to a third party founds an indictment for bigamy.

2. Where a complainant wife before final disposition of a suit for annulment undertook a marriage to another, her bigamous marriage did not affect her right to a decree annulling her first marriage with the defendant, as such indiscretion or crime had no relation to the nature of her marriage with the defendant, and could not affect any remedy which she might have to be relieved from the fraudulent marriage which constitutes her grievance in this case.

3. Where a wife brought suit for annulment on the ground of fraudulent marriage and was granted a decree nisi, and before final decree remarried her husband, such second marriage was absolutely inoperative so far as it attempted to originate and create at that time the status of marriage between the parties, for the reason that they were already united by a legal and valid marriage, and they would remain so until a decree of nullity.

4. A second marriage between the same parties without intervening divorce creates the legal status of marriage for the first time if the former marriage was void, but if the prior marriage was voidable only, the second marriage operates as a most solemn ratification relating back to the date of the prior voidable marriage and as against the parties themselves, and as against the whole world, renders the voidable marriage absolutely valid ab initio.

5.. Where a wife brought suit for divorce on the ground of a fraudulent marriage, and a decree nisi was entered, and before final decree she attempted to contract a marriage with another with whom she lived for about seven months, and subsequently and before the confirmation of the decree nisi remarried the defendant, such ceremony of marriage and their subsequent cohabitation amounted to an absolute ratification on the part of the petitioner of the original so-called voidable marriage which at the time of the second marriage she was suing the defendant to have annuled.

6. Where a wife brought suit for divorce on the ground of a fraudulent marriage, and a decree nisi was entered, and subsequently and before confirmation she attempted to contract a marriage with another and lived with him for about seven months, and then, and still before the confirmation of the decree nisi she remarried the defendant—Held, that she was not entitled to an absolute decree annulling her first marriage to the defendant on the ground that if her first marriage was induced by fraud, her subsequent marriage to the defendant was an absolute ratification thereof.

7. Where in a wife's suit for annulment on the ground of fraud a decree nisi was entered, and before confirmation the wife undertook to contract a marriage with another, with whom she lived for several months, and still before confirmation she remarried the defendant without intervening divorce, the fact of duress, which she alleged was the cause of her second marriage to the defendant, must be established in court where the witnesses can be cross-examined by counsel or by the court, or by a master upon a reference of the case back to him, and cannot be established by the ex parte affidavit of the petitioner.

8. Under such circumstances her attempted secret marriage during the pendency of the nullity suit, and her whole conduct, indicated a disregard of the obligations and of the proprieties and decencies of life which discredited her credibility as a witness so as not to support her claim that her second marriage with the defendant was under duress and threats of prosecution for bigamy, and cannot sustain a decree of divorce.

———

On application for an absolute decree of nullity of marriage.

*Mr. William M. Rysdyk,* for the petitioner.

*Mr. William Mayo Atkinson,* for the defendant Ewers.

STEVENSON, ADVISORY MASTER.

My conclusion upon the application on behalf of the petitioner for an absolute decree, made subsequent to the entry of the decree *nisi* on January 7th, 1920, is that the proofs as they stand show "sufficient cause" to the court why the decree *nisi* should not be made absolute, and that if no further proofs are taken the decree *nisi* should be vacated and the petition dismissed.

The facts which constitute the "sufficient cause" above referred to are set forth in the sworn petition for an absolute decree presented to the court by the petitioner. Only some of these facts need be repeated here. This application, at the suggestion of the court, was made by petition because of the complicated situation created by the two marriages entered into, or attempted to be entered into, by the petitioner after the commencement of this suit, all of which matters were unknown to the special master who heard the case *ex parte,* and were brought to the notice of the court by the solicitor of the petitioner in performance of a duty to the court and to the state which he recognized and fully discharged.

The case in brief, without reciting the facts at length, is as follows:

The suit for nullity was conducted to a finish and the marriage between the petitioner and Horter was adjudged void-

able upon the suit of the petitioner on the ground of fraud, the marriage not having been consummated or ratified. *Ysern* v. *Horter, 91 N. J. Eq. 189.* Down to the entry of the decree *nisi* on January 7th, 1920, neither the solicitor for the petitioner, the special master who heard the case *ex parte,* nor the vice-chancellor to whom the master's report and advisory opinion were referred for final disposition, had any notice of the petitioner's marital transactions between the time of the commencement of the suit and the time of the decision of the cause by the vice-chancellor and the entry of the decree *nisi.* In fact it was disclosed to the court, just in time to prevent the entry of the absolute decee as a matter of course, that on March 19th, 1919, about three months and a half after the commencement of this suit, the petitioner had undertaken to enter into a ceremonial marriage in the State of New York with one Waldo I. Ewers. The petitioner and Ewers cohabited in New Jersey and in California, where they passed as man and wife, for different periods until about November, 1919, when they finally separated.

On April 18th, 1920, Horter induced the petitioner to enter into a regular ceremonial marriage by the rector of St. Nicholas Roman Catholic Church, in Passaic, to whom they exhibited the record from the registrar of vital statistics of Rutherford, New Jersey, of their prior marriage by a Protestant minister, stating that they desired to be married according to their own faith. The Roman Catholic priest thereupon married the couple according to the ritual of his church, requiring no license because of the certificate of the former marriage, and thereafter the couple cohabited for some weeks or months. The fact of this ceremonial marriage is proved by the *ex parte* affidavit of the rector of St. Nicholas Roman Catholic Church, offered in evidence on behalf of the petitioner. There is nothing on the face of this affidavit which in any way intimates that the couple who were married were not acting voluntarily, uninfluenced by fraud or coercion.

It will be observed that the attempted marriage of the petitioner and Ewers was made while this suit was pending and before the master's report was made. The fact of the marriage to Ewers is proved not only by the sworn petition of the petitioner but also by an exemplified copy of the record of the marriage and official papers connected therewith in the public office in the city and county of New York where such records are kept. This record was offered in evidence on behalf of the petitioner.

1. The marriage between the petitioner and Ewers was and is absolutely void at the common law. No decree or even attempted disaffirmance by the petitioner was necessary to establish the invalidity of this marriage *ab initio,* nor could the parties in any way ratify or confirm the marriage. The authorities are in accord that a so-called voidable marriage, that is to say, a marriage which one of the parties during the lifetime of both has the option by a decree to have declared void *ab initio,* is, until such decree is made, a valid marriage, rendering each party incapable of marrying a third party, and any attempted marriage to a third party founds an indictment for bigamy. *State* v. *Yoder, 113 Minn. 503; S. C., L. R. A. 1916 c. 686 et seq. and notes; Schoul. Dom. Rel. 24; 1 Bish. M., D. & S. § 259; 2 Nels. D. & S. § 569.*

Whether in case of a so-called voidable marriage the spouse who attempts to marry a third part is indictable or punishable for bigamy, if the validity of the second marriage is first brought in question after a decree annulling the first marriage, we need not inquire, if there is room for such inquiry. In the instant case the so-called marriage of the petitioner with Ewers was entered into before any decree annulling her first marriage with Horter had been made, or could be made, and no ratification or confirmation of her marriage with Ewers was at any time made by her, nor was such confirmation or ratification at any time possible, because no absolute decree annulling the petitioner's first marriage with Horter as yet has been made.

2. The bigamous marriage of the petitioner with Ewers does not affect her right to a decree annulling her first marriage with the defendant, Horter. Such indiscretion or crime committed by her has no relation to the nature of her marriage with Horter, and cannot affect any remedy which she may have to be relieved from the fraudulent marriage which constitutes her grievance in this case. All questions growing out of her attempted marriage with Ewers, including the status of the child born July 2d, 1920, and said to be the child of Ewers, and any reckoning which she must make with the State of New Jersey upon an indictment for bigamy, are left unaffected, whatever the disposition of this instant case may be. The petitioner's adultery has no more connection with her injury by the defendant, Horter, than any other crime committed by her would have. *G.* v. *M., 10 App. Cas. 171; 2 Bish. M., D. & S.* § *1275; 2 Nels. D. & S.* § *687.*

3. The ceremony purporting to be a marriage between the petitioner and Horter, performed by the clergyman on April 18th, 1920, in my judgment, must be deemed absolutely inoperative so far as it attempted to originate and create at that time the status of marriage between these parties. They were already united by a legal and valid marriage, and they would remain so united until an absolute decree of nullity should be made by this court in this suit which was then pending. The existence of a so-called voidable marriage, which one of the parties is prosecuting a suit to have declared void *ab initio,* seems to me not only to incapacitate either party to enter into a marriage with a third party, but also to incapacitate both to create the marriage state between themselves by any new ceremony. A couple who are married already cannot marry each other a second time.

4. We now come, I think, to the *crux* of this case which is presented by the question whether this second attempted marriage of the petitioner and Horter amounted to a ratification of the first marriage.

It often happens that a couple living as man and wife, after having gone through a formal ceremony of marriage, enter-

tain doubts as to the validity of such marriage. A large number of different sets of conditions may be stated under which a couple living as man and wife are led, perhaps by the advice of counsel, to entertain such doubts. They resort to a second ceremony of marriage, there being no question that at the time of such ceremony any impediment to the former attempted marriage has ceased to exist.

It seems to me that in the case stated the result is that if the prior attempted marriage was in fact absolutely void, the second ceremony creates the legal status of marriage between the parties for the first time. On the other hand, if the prior marriage was voidable, the second ceremony operates as a most solemn ratification, relating back to the date of the prior voidable marriage, and as against the parties themselves and as against the whole world, rendering the voidable marriage absolutely valid *ab initio*.

5. My conclusion upon the facts so far stated is that this subsequent ceremony of marriage of the petitioner and Horter, and their subsequent cohabitation, amounted to an absolute ratification on the part of the petitioner of the original so-called voidable marriage, which at the time of the second marriage she was suing the defendant, Horter, to have annuled. In other words, in the most solemn manner the petitioner abandoned her attempt to have her original marriage with Horter declared null and void and elected to ratify that marriage.

The result so far would be that the petitioner cannot be entitled to an absolute decree annulling her first marriage with Horter. Of course, a so-called voidable marriage, which the injured party has the option to have declared void *ab initio* during the lifetime of both parties, may at any time before the final decree of annulment be ratified and confirmed. If such subsequent ratification is in any way brought to the attention of the court and duly proved, the court of its own motion, if necessary, will decline to make a decree of nullity.

6. The one question which remains arises from certain facts alleged in the petitioner's petition for an absolute decree. This petition alleges that the second ceremony of marriage and subsequent cohabitation of the petitioner with Horter were produced by duress inflicted upon her by Horter, whereby without consent on her part and through fear of criminal prosecution for bigamy, which Horter threatened to have instituted if she did not yield to him, she was impelled to go through the second ceremony of marriage and thereafter for a time cohabit with him.

The court, however, cannot accept the *ex parte* affidavit of the petitioner and the oral statements of her counsel in court as a sufficient proof upon which this court can practically declare the so-called marriage ceremony between the petitioner and Horter inoperative as a ratification. I do not hold that this second ceremony of marriage created a voidable marriage between these parties because, as above stated, they were man and wife already, and would remain such until a final decree of nullity in this present suit should be made. I do not think that any direct suit *in rem.* to have this second attempted marriage declared a nullity would be necessary in order to render it ineffective as a ratification. A second ceremony of marriage between parties who already stand in the position of man and wife owing to a voidable marriage between them already existing, according to well-settled principles, is as inoperative as a marriage as in the case where the prior marriage between the parties was obsolutely valid. The sole question for investigation in regard to the nature and effect of the second ceremony of marriage is whether such ceremony followed by cohabitation for a considerable period of time effected not the establishment as of that date of the marriage state, but an absolute ratification by the petitioner of the first marriage, which until such ratification as to her had been voidable.

The difficulty is that with a presumption of solemn ratification established in this case so as to defeat the petitioner's suit for nullity, the court is asked to accept merely the *ex*

*parte* affidavit of the petitioner to establish the important fact that this presumptive ratification was inoperative on account of duress. The fact of duress must be established in court where the witnesses can be cross-examined by counsel or by the court, or, as this was an *ex parte* case originally, by the master, upon a reference of the case back to him.

In this case it appears that the testimony of the petitioner is greatly discredited. Her attempted secret marriage to Ewers, when presumably she knew that her suit for nullity was pending against Horter, and her second marriage with Horter—her whole conduct in this complex of matrimonial relations which she rashly created—indicate a disregard of obligations and of the proprieties and decencies of life which I think affect her credibility as a witness.' Moreover, it appears from the record of the license to marry in the State of New York, applied for by Ewers and the petitioner and put in evidence on behalf of the petitioner, that the petitioner, for the purpose of obtaining such license, swore that the marriage with Ewers for which she applied for a license would be her first marriage and that she had no "former husband or husbands, living or dead."

In view of the unusual course of procedure in this case, and the manner in which new issues have been injected into it after the entry of the decree *nisi,* I will hear any application on behalf of the petitioner, in case she desires to make one, to have an investigation made, either in open court or by the master, of the question whether the second ceremony of marriage with Horter was or was not a ratification of the first marriage which was declared null and void *ab initio* on the ground of fraud by the decree *nisi.* Notice of such application must be given to any solicitor representing Mr. Horter, of whom the solicitor for petitioner has notice, and to the solicitor who at one time heretofore represented Mr. Ewers, and also to Mr. Horter and Mr. Ewers personally, if they or either of them can be found in this state, and if they or either of them cannot be so found, then by mailing such notice to their or his post-office address if the same upon due

inquiry can be ascertained. The motion may be noticed before me as advisory master for any Tuesday, Wednesday or Thursday at the chancery chambers in Paterson. If no application shall be made by October 1st, 1922, an order will be made in accordance with the views set forth in this memorandum.

NOTE.—This case having been before Hon. Eugene Stevenson as vice-chancellor (*91 N. J. Eq. 189*), it was referred to him as advisory master after the expiration of his term as vice-chancellor.—REP.