129 N.J. Super. 445 (1974)
324 A.2d 69
ROBERT RAMSHARDT, PLAINTIFF,
v.
ELEANORA BALLARDINI, a/k/a ELEANORA RAMSHARDT, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 22, 1974.
*446 Mr. James M. Cerra for plaintiff (Messrs. Maraziti, Maraziti and Cerra, attorneys).
MacKENZIE, J.J.D.R.C., Temporarily Assigned.
Plaintiff Robert Ramshardt seeks an annulment pursuant to N.J.S.A. 2A:34-1(d), alleging that the marriage had been entered into between the parties but that there was "a lack of mutual assent to th emarital relationship." Defendant failed to appear or otherwise defend herself although she was personally served with process.
The facts are uncontested. Robert Ramshardt, then age 22 years, and Eleanora Ballardini, then age 33 years, entered into a ceremony of marriage on June 23, 1973, approximately one month after they met. Robert married Eleanora as a favor to defendant's brother, his close friend. Ballardini explained that his sister Eleanora, an Italian citizen in the United States on a visitor's visa, was about to be deported to Italy, but that if plaintiff went through the marriage ceremony defendant would be able to remain in this country. It is alleged, and the court finds, that "plaintiff's sole purpose *447 in agreeing to marry the defendant was to prevent her deportation and he did not intend to live with her as man and wife or to consummate the marriage." Defendant's intention was the same. In fact, she continued to live with her three children and their father who was also an Italian national. At no time since the marriage ceremony did plaintiff and defendant cohabit or live together as man and wife.
As expressed by the court in Minder v. Minder, 83 N.J. Super. 159 (Ch. Div. 1964), the law in New Jersey is clear that:
Mutual consent of competent parties to assume a marital status is essential to a marriage in New Jersey. A marriage lacking at its inception the contractual element of mutual consent is totally void and not merely voidable. [at 164]
See also United States v. Rubenstein, 151 F.2d 915, 919 (2 Cir.1945), where the court stated, in dictum:
It is quite true that a marriage without subsequent consummation will be valid; but if the spouses agree to a marriage only for the sake of representing it as such to the outside world and with the understanding that they will put an end to it as soon as it has served its purpose to deceive, they have never really agreed to be married at all.
See also, McClurg v. Terry, 21 N.J. Eq. 225 (Ch. 1870).
It is clear that in this case, although the parties intended a valid marriage ceremony, they in no way intended a valid "marital relationship," to use the words of N.J.S.A. 2A:34-1 (d). Accordingly, the marriage herein may be deemed void, and if the plaintiff is not barred by the doctrine of unclean hands, the judgment of annulment may be granted.
The Reform Divorce Law of 1971, N.J.S.A. 2A:34-1 et seq., abolished the defense of unclean hands as it pertained to actions for divorce, but it remains valid with reference to annulments. Although neither party raised unclean hands in this uncontested action, the court is obliged to raise it *448 sua sponte where, "after weighing the equities and the interests of justice and public policy, it believes that plaintiff should not receive the relief requested." Hansen v. Fredo, 123 N.J. Super. 388, 391 (Ch. Div. 1973). As pointed out, however, in B. v. S., 99 N.J. Super. 429 (Ch. Div. 1968):
"Unclean hands" is not a doctrine to be applied automatically and mechanically; it allows room for equitable considerations arising out of time, place and circumstance. [at 434]
The burden of showing the circumstances and considerations must be placed on plaintiff, and he must show "his innocence of any intentional violation of law." Tonti v. Chadwick, 1 N.J. 531, 536 (1949). In this case plaintiff has made the necessary showing. Shortly after the marriage plaintiff repented and filed with the Immigration and Naturalization Service of the United States Department of Justice a sworn statement wherein he set forth the facts which were proven to the court. In that affidavit plaintiff affirmed, as he did in court, that "I know that what I did was wrong and I want to straighten it out." Defendant was subsequently deported. This court finds that justice would not be served by imposing the doctrine of unclean hands under these circumstances, noting the statement of the Appellate Division in Warrender v. Warrender, 79 N.J. Super. 114 (App. Div. 1963) that:
Certainly, if one of the guilty parties quickly repented and made application to repair the wrongdoing, there cannot well be imagined any good reason against permitting it to be done. [at 122]
Judgment of annulment granted.