## Richmond
### WENDY L. KLEINFIELD
v.
### PETER ELI VERUKI
No. 0812-87-2
Decided September 20, 1988

184

COUNSEL

J. Lloyd Snook, III, for Wendy L. Kleinfield, appellant.

David L. Heilberg (Davis & Heilberg, on brief), for Peter Eli Veruki, appellee.

OPINION

MOON, J. — Wendy L. Kleinfield seeks reversal of a judgment which denied her spousal support on the ground that her marriage to Peter Veruki was bigamous. Because Kleinfield was a party to a voidable marriage that had not been annulled when she married Veruki, we affirm the trial court's decision. Peter Veruki also appeals from the judgment entered and alleges that the trial court erroneously awarded attorney's fees and erroneously failed to provide restitution for *pendente lite* spousal support paid prior to judgment. Because the trial judge did not abuse his discretion, we also affirm his decision to award attorney's fees and *pendente lite* spousal support.

On November 26, 1983, Wendy Kleinfield and Peter Veruki married in New York City. Three years later, after the couple had moved to Charlottesville, Virginia, Kleinfield filed a complaint for divorce based on desertion. The trial judge ordered $800 per month *pendente lite* support pursuant to Code § 20-103. Thereafter, Veruki answered Kleinfield's bill and asserted that no valid marriage between them ever existed because Kleinfield was already married to a William Ricardo Garcia.

Kleinfield filed an amended bill of complaint alleging adultery and arguing that her marriage to Garcia was void *ab initio* as

opposed to merely voidable because she married Garcia, an alien, for the sole purpose of allowing him to obtain naturalized citizen status in the United States. These marriages are frequently referred to as "green card marriages" because of the color of the document the alien receives from the Immigration and Naturalization Services (INS) as evidence of legitimate status. Veruki argued that although the marriage may have been entered into solely for the purpose of allowing Garcia to obtain citizenship, the marriage to Garcia was still valid on the date he and Kleinfield married because no court had ever annulled it.

The trial judge decided that the Kleinfield and Garcia marriage was only *voidable* and not *void*. Hence, because no court had ever voided the marriage between Kleinfield and Garcia, the trial court ruled that Kleinfield's and Veruki's marriage was a bigamous one. Applying Virginia law, the court determined that since the marriage to Veruki was invalid, Kleinfield could not maintain an action for spousal support or equitable distribution. However, the trial court did award attorney's fees of $1,500 to Kleinfield and refused to order reimbursement to Veruki for the *pendente lite* spousal support which he had been required to pay.

The evidence showed that Kleinfield married Garcia for $1500 on June 7, 1976, in New Jersey solely to insure that Garcia would attain naturalized citizen status in the United States. The couple never lived together as husband and wife. After the marriage, they represented to the INS that they were married, and Garcia applied for citizenship. Two years later, Kleinfield became apprehensive because the INS was proceeding so slowly in approving Garcia's application for citizenship. Therefore, she withdrew the application from the INS and asserted that she had married Garcia solely for the purpose of allowing him to obtain naturalized status. Neither Kleinfield nor Garcia ever secured a judgment which annulled their marriage.

Before her 1983 marriage to Veruki, and in order to obtain her marriage license, Kleinfield swore to a New York City clerk that she had never been married before. Veruki testified that after their marriage, he found documents in Kleinfield's files which led him to suspect that she had been married before. He claimed that Kleinfield never told him before they were married that she had undertaken the 1976 sham marriage with Garcia. Conversely, Kleinfield testified that she had told Veruki early on in their

courtship about the circumstances of her marriage to Garcia. The trial judge made no specific finding of fact as to when each individual had been honest with the other; however, he did note that both parties appeared to have been deceptive with and suspicious of the other.

■ In our analysis, we are concerned with the validity of two marriages: first, Kleinfield's New Jersey marriage to Garcia; and second, Kleinfield's New York marriage to Veruki. A marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy. *Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 430, 4 S.E.2d 364, 368-69 (1939).

■ A marriage entered into prior to the dissolution of an earlier marriage of one of the parties is a void marriage in New York, *Sophian v. Sophian*, 279 A.D. 651, 108 N.Y.S.2d 185 (1951), and Virginia. *See* Code §§ 20-38.1 and 20-45.1(a). A void marriage, unlike a voidable marriage, does not require an action of annulment to render it void. Without obtaining an annulment, a party to a void marriage is free to marry again. Conversely, a party to a voidable marriage must obtain an annulment, or any subsequent marriage is bigamous. Therefore, if Kleinfield's marriage to Garcia was not void, but merely voidable, then the marriage to Veruki was bigamous and could not support an action for spousal support and equitable distribution. *Toler*, 173 Va. at 435, 4 S.E.2d at 368. Thus, we must decide whether Kleinfield's previous marriage to Garcia was void or voidable.

Accordingly, we turn to whether New Jersey law considers the Garcia marriage void *ab initio*, or merely voidable. A void marriage under New Jersey law generally does not require a judicial determination to set it aside. A void marriage may not be ratified and may be attacked, either collaterally or directly, either before or after the death of the parties. *Flaxman v. Flaxman*, 57 N.J. 458, 461, 273 A.2d 567, 569 (1980). In New Jersey, when two parties have entered into a voidable marriage, the marriage remains valid until a decree of nullification is entered. *Ysern v. Horter*, 94 N.J. Eq. 135, 118 A. 774 (Ch. 1922). Therefore, the voidable marriage renders each party incapable of marrying a third party without committing bigamy.

No New Jersey court has specifically determined whether a green card marriage is void or voidable or requires court action to annul it. We begin our analysis by scrutinizing the plain language of N.J. Stat. Ann. § 2A:34-1 (West 1987). The statutory section provides in pertinent part:

Judgments of nullity of marriage may be rendered in all cases, when:

a. Either of the parties has another wife or husband living at the time of a second or other marriage.

b. The parties are within the degrees prohibited by law. If any such marriage shall not have been annulled during the lifetime of the parties the validity thereof shall not be inquired into after the death of either party.

\* \* \* \*

c. The parties, or either of them, were at the time of marriage physically or incurably impotent, provided the party making the application shall have been cognizant of such impotency or incapability at the time of the marriage, and has not subsequently ratified the marriage.

d. The parties, or either of them, lacked capacity to marry due to want of understanding because of mental condition, or the influence of intoxicants, drugs or similar agents; or where there was a lack of mutual assent to the marital relationship; duress or fraud as to the essentials of marriage; and have not subsequently ratified the marriage.

e. The demand for such a judgment is by the wife or husband who was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by her or him after arriving at such age.

f. Allowable under the general equity jurisdiction of the Superior Court.

Without expressly determining the void/voidability question, the New Jersey Supreme Court has held that a green card marriage falls within the ambit of subsection (d). *Faustin v. Lewis*, 85 N.J. 507, 427 A.2d 1105 (1980). Because subsection (d) authorizes nullity judgments in circumstances where the parties lacked genuine consent *and have not subsequently ratified the marriage*, we believe that in New Jersey green card marriages must be merely voidable and not void *ab initio*. For, if the parties can subsequently ratify the marriage and give it legal effect, the marriage could not have been void from its commencement.

Thus, for example, subsection (a) authorizes judgments of nullity in all cases of bigamy and does not permit the marriage to be subsequently ratified. The New Jersey legislature recognized that since bigamous marriages were void from their inception, ratification could not subsequently render them legally effective. In his dissent in *Faustin v. Lewis*, 85 N.J. 507, 516, 427 A.2d 1105, 1109 (1980)(where the majority did not discuss the void/voidable dichotomy to reach its holding), Justice Pashman recognized that green card marriages were merely voidable because they could subsequently be ratified by the parties.

Kleinfield relies upon the case of *Ramshardt v. Ballardini*, 129 N.J. Super. 445, 324 A.2d 69 (1974). Ramshardt married Ballardini to prevent her deportation. They never intended to live as husband and wife and, after the marriage, Ramshardt notified the INS that the marriage was fraudulent. Ramshardt then brought an action to have the marriage annulled. The Superior Court Chancery Division determined that because the parties lacked the requisite mutual consent under N.J. Stat. Ann. § 2A:34-1(d) to enter a genuine marriage, the marriage may be deemed void. The court further found that the equitable doctrine of "unclean hands" did not bar Ramshardt from relief because he had subsequently withdrawn the application from the INS. Kleinfield argues that her situation is directly apposite to the factual pattern in Ballardini and concludes that her marriage to Garcia was void from its inception.

We do not believe that *Ballardini* provides dispositive authority which binds us under the facts at bar. We are not persuaded that the phrase "may be deemed void" was intended to be a declaration that at its inception the marriage was void rather than voidable. Moreover, if the phrase was intended to address the void/voidable distinction it was mere dictum. Under the court's reasoning, the marriage would have been annulled whether it was void from its inception or merely voidable. We must choose, therefore, between the dictum and ambiguous language expressed in a lower court's opinion and Justice Pashman's cogent statutory analysis in *Faustin.*

The issue before the court in *Faustin* was "the extent to which the equitable doctrine of unclean hands should have continued application to annulment proceedings." 85 N.J. at 508, 427 A.2d at 1105. We believe that it is important to note that Justice Pashman "agree[d] with most of the majority opinion and especially with the majority's rejection of . . . [t]he rule that unclean hands is a *per se* bar to an action for annulment . . ., leaving discretion with the courts to apply the doctrine only in appropriate cases." *Id.* at 513-14, 427 A.2d at 1108. Justice Pashman disagreed only with "the way the majority exercise[d] discretion under the facts of [that] case and with the result . . . ultimately reach[ed]." *Id.* In stating how he would exercise discretion on the facts of that case, Justice Pashman discussed N.J. Stat. Ann. § 2A:34-1(d) as it relates to the void/voidable distinction. We conclude that the portion of Justice Pashman's dissent which interprets N.J. Stat. Ann. § 2A:34-1(d), a topic not discussed by the *Faustin* majority and not controlling its decision, is not at odds with the majority opinion and provides a basis upon which we can conclude that under New Jersey law Kleinfield's marriage to Garcia was voidable. Her subsequent marriage to Veruki is thus bigamous and void.

Kleinfield also asserts that Veruki should be estopped to claim that her prior marriage to Garcia was not void. The trial court found that Kleinfield could not rely upon estoppel because she, more than Veruki, knew the true facts concerning the Garcia marriage. Although Veruki admitted becoming suspicious concerning the Garcia marriage while still living with Kleinfield, he denied knowing that the marriage had not been annulled until this divorce action was filed. Thus, we find that the trial court's decision that no estoppel had been proven was not plainly wrong.

■ Furthermore, even where one acts in good faith, a bigamous marriage is void and it confers no legal rights to the parties. It is "contrary to the laws of Virginia and public policy." *Chitwood v. Prudential Life Ins. Co. of America*, 206 Va. 314, 317, 143 S.E.2d 915, 918 (1965); *see also Toler*, 173 Va. at 435, 4 S.E.2d at 368-69. Only "upon decreeing the dissolution of a marriage" do the courts of Virginia have jurisdiction to award spousal support or equitable distribution. Code §§ 20-107.1 and 20-107.3. Since the marriage to Veruki was void and, thus, there was no marriage, the trial court had no authority to award spousal support or make an equitable distribution award. There is no authority for the parties by their actions outside of the law to invest the courts with power to treat a relationship as a lawful marriage.

■ Next, we turn to Veruki's question as to whether the trial judge abused his discretion in not ordering a refusal of *pendente lite* support and allowing counsel fees to Kleinfield after deciding that her marriage to Veruki was void. In *Henderson v. Henderson*, 187 Va. 121, 46 S.E.2d 10 (1948), the court held that even if the marriage was void, the award of support and maintenance was within the discretion of the trial judge, noting that the statute, now Code § 20-103 made no distinction between suits for annulment and divorce. Code § 20-103 provides:

> The court . . . may, at any time pending the suit, in the discretion of such court or judge, make any order that may be proper to compel a spouse to pay any such sums necessary for the maintenance and support of the petitioning spouse and to enable such spouse to carry on the suit.

Under the facts and circumstances of the case, we cannot find that the trial judge abused his discretion by the award of *pendente lite* support and attorney's fees.

Therefore, the decree appealed from is affirmed.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.