**Alexandria**

AHMED FARAH

v.

NAIMA MANSUR FARAH

No. 0184-92-4

Decided May 11, 1993

COUNSEL

Ted Kavrukov (Kleiman & Kavrukov, on briefs), for appellant.

George E. Tuttle, Jr., for appellee.

OPINION

**COLEMAN, J.**—In this appeal from a declaratory judgment and divorce decree, we hold that a proxy marriage celebrated in England will not be recognized as a valid marriage in Virginia. Accordingly, we hold that the trial judge erred by declaring the Farahs' marriage to be valid in Virginia based on the trial judge's finding that the marriage was valid under Islamic or Pakistani law. Thus, because no valid marriage existed under Virginia law, the trial judge erred by granting the parties a divorce and by equitably distributing their property pursuant to Code § 20-107.3. We remand the case to the trial court to vacate the declaratory judgment and divorce decree and for such further proceedings as may be necessary.

Ahmed Farah is a citizen of Algeria. Naima Mansur is a citizen of Pakistan. They have resided in Virginia for several years. They belong to different Muslim sects. They signed a proxy marriage form (the "Nikah") that is used to solemnize marriages by members of the Ahmadiyya Muslim community. The "Nikah" or marriage contract also provided that Ahmed Farah would receive a deferred payment of $20,000 as the wife's dower. On July 31, 1988, Ahmed Farah and Naima Mansur purported to enter into a Muslim marriage through their proxies in London, England. Neither Ahmed Farah nor Naima Mansur was present in England during the ceremony. No marriage certificate was issued by any court or governmental authority in England. According to testimony at trial, under Islamic law and Pakistani law, which generally recognizes Islamic religious law, the parties to the "Nikah" are legally married once the proxy ceremony is complete. During the ceremony, a member of the Muslim community solemnizes the marriage in the presence of the parties' proxy representatives and their witnesses.

Approximately one month after the "Nikah" was solemnized in London, the parties went to Pakistan for three days, where Naima Mansur's father held a reception (the "Rukhsati") in their honor.

Under the tradition of the wife's Islamic sect, the "Rukhsati" symbolizes the sending away of the bride with her husband. The parties returned to Virginia in September of 1988 and purchased a house that was jointly titled in both names. They had intended to have a civil marriage ceremony when they returned to the United States, but they never did so. They lived together in Virginia as husband and wife for about one year when, on June 29, 1989, they separated, and Ahmed Farah filed a bill to have the marriage declared void and Naima Mansur filed for divorce and equitable distribution.

At trial, Ahmed Farah introduced testimony from a solicitor of the Supreme Court of England and Wales[1] that a marriage performed in England is void *ab initio* unless all statutory formalities of the Marriage Act[2] are satisfied. The Marriage Act of England requires issuance of a marriage license, fifteen-day residence in England by one of the parties before the marriage, and the issuance of a certificate of

---

[1] The Supreme Court of England and Wales is the highest appellate court in England and Wales, consisting of the Court of Appeal and the High Court of Justice and formally known as the Supreme Court of Judicature of England and Wales. *See The Bluebook: A Uniform System of Citation*, 252-53 (15th ed. 1991).

[2] **Requisites of valid marriage and presumption of validity.** The requisites of a valid marriage according to English law include . . . that certain forms and ceremonies should be observed. Absence of the requisites of a valid marriage results in the marriage being void or voidable, and, in the case of marriages celebrated after 31st July 1971, the only grounds on which they may be void or voidable are those laid down by statute. *See* Matrimonial Causes Act, 1973, ch. 18 § 11 (Eng.) and Marriage Act, 1949, 12, 13 & 14 Geo. 6, ch. 76, § 25 (Eng.).

\* \* \*

**Methods of lawful marriage in England and Wales.** The Marriage Acts require that every marriage should be by banns, license or superintendent registrar's certificate or certificate and license or naval officer's certificate, and, except in the case of a marriage according to the usages of the Jews or Quakers and of a marriage by special license, that it should be solemnised in a church or chapel of the Church of England in which marriages may lawfully be solemnised, or in a superintendent's registrar's office, or in a nonconformist church or building duly registered for the solemnisation of marriages or in a naval, military or air force chapel.

**Effect of disregard of requirements as to forms and ceremonies.** Where persons knowingly and wilfully intermarry in disregard of certain requirements as to the formation of marriage, the marriage is void. (citing Marriage Act, 1949, 12, 13 & 14 Geo. 6, ch. 76, § 25 (Eng.)).

22 Halsbury's Laws of England, *Husband and Wife* ¶ ¶ 907, 913-14 (4th ed. 1979).

Section 25 of chapter 76 of the Marriage Act, 1949, provides, in pertinent part:

marriage by a duly authorized registrar of marriages. Ahmed Farah and Naima Mansur, in their proxy marriage, did not obtain a special license nor did they comply with any of the formalities required by the Marriage Act of England.

Naima Mansur contends that, even though they did not comply with the requirements of the Marriage Act of England, her marriage to Ahmed Farah is valid and must be recognized in Virginia. She asserts that the English law governing her marriage is not applicable because the marriage ceremony was completed in Pakistan by conducting the "Rukhsati," and, furthermore, that the proxy marriage conducted in London was valid under Pakistani law, which recognizes a valid Islamic marriage.

■ A marriage that is valid under the law of the state or country where it is celebrated is valid in Virginia, unless it is repugnant to public policy. *Kleinfield v. Veruki*, 7 Va. App. 183, 186, 372 S.E.2d 407, 409 (1988). A marriage that is void where it was celebrated is

25. If any persons knowingly and wilfully intermarry according to the rites of the Church of England (otherwise than by special license)—

    (a)   in any place other than a church or other building in which banns* may be published;

    (b)   without banns having been duly published, a common licence having been obtained, or a certificate having been duly issued under Part III of this Act by a superintendent registrar to whom due notice of marriage has been given;

* * *

or if they knowingly and wilfully consent to or acquiesce in the solemnization of the marriage by any person who is not in Holy Orders, the marriage shall be void.

The Matrimonial Causes Act, 1973, declares certain purported marriages to be a nullity, as follows:

**11.** A marriage celebrated after 31st July 1971 shall be void on the following grounds only, that is to say—

    (a)   that it is not a valid marriage under the provisions of [the Marriages Acts 1949 to 1986] that is to say where—

* * *

    (iii)   the parties have intermarried in disregard of certain requirements as to the formation of marriage; . . . .

---

* Banns is notice of a proposed marriage proclaimed in a church or other place prescribed by law in order that any person may object who knows of an impediment to the marriage.

void everywhere. *Spradlin v. State Compensation Comm'r*, 113 S.E.2d 832, 834 (W. Va. 1960). Although the trial judge found that the marriage was celebrated in England, he ruled, however, that

> the marriage of the parties took place in London under Moslem law which was applicable to the parties, that the marriage by proxy is sanctioned under Moslem law and that the law of the state of Pakistan sanctions marriages performed under the personal law of the parties which in this case was Moslem law. . . . The Commonwealth of Virginia recognizes the marriage as consistent with Islamic law and therefore as valid by a state, viz., Pakistan, to which the comity of recognition is due.

The trial court granted the parties a divorce based upon a separation of more than one year and ordered equitable distribution of their jointly owned marital residence by evenly dividing the equity of approximately $62,000.

█ The fact that Pakistan may recognize the parties' marriage as valid because it was valid according to Islamic religious law does not control the issue of the validity of the marriage under Virginia law. In Virginia, whether a marriage is valid is controlled by the law of the place where the marriage was celebrated. *Kleinfield*, 7 Va. App. at 186, 372 S.E.2d at 409. Thus, the question is whether aspects of the marriage were performed in Pakistan, as the wife contends, so that it was a marriage celebrated in Pakistan, or whether it was a valid marriage celebrated in England.

The only aspect of the Muslim ceremony that occurred in Pakistan was the "Rukhsati," or reception, which the evidence showed is merely a custom that has no legal significance and is not a formality required for a legal marriage in Pakistan. Furthermore, at trial, evidence was presented that even Pakistan would not recognize the proxy marriage in England as valid because, contrary to Islamic law, the parties had not signed the "Nikah" at the same time and also because the wife was a member of a controversial Muslim sect that the Pakistani government did not recognize. No evidence established that a marriage ceremony, or any part of it, occurred in Pakistan or that it was celebrated in any jurisdiction other than England.

Because the marriage was contracted and celebrated in England, the validity of the marriage is determined according to English law. *Id.* at 186, 372 S.E.2d at 409. The Marriage Act of England requires that a

marriage be contracted in strict compliance with its statutory formalities.[3] None of those formalities were complied with in the proxy marriage. Therefore, the marriage was void *ab initio* in England and is void in Virginia.

■ Furthermore, Ahmed Farah and Naima Mansur did not enter into a common law marriage that Virginia recognizes. Virginia does not recognize common-law marriages where the relationship is created in Virginia. *Offield v. Davis*, 100 Va. 250, 253, 40 S.E. 910, 914 (1902). Virginia does recognize a common-law marriage that is valid under the laws of the jurisdiction where the common-law relationship was created. *Kleinfield*, 7 Va. App. at 186, 372 S.E.2d at 409; *Metropolitan Life Ins. Co. v. Holding*, 293 F. Supp. 854, 857 (E.D. Va. 1968). There is no evidence, however, that Ahmed Farah and Naima Mansur created a common-law marriage by entering into a relationship as husband and wife in any jurisdiction that recognizes common-law marriages.

For these reasons, we hold that Ahmed Farah and Naima Mansur never entered into a marriage that is recognized as valid in Virginia. Accordingly, no marriage existed from which the trial judge could grant a divorce according to Virginia law.

Therefore, we reverse the trial judge's declaratory judgment finding that the parties entered into a valid marriage, and we remand the matter for the circuit court to vacate the divorce decree and order of equitable distribution. We leave the parties to seek such other remedies as are appropriate to determine and resolve their property rights.

*Reversed and remanded.*

Barrow, J., and Benton, J., concurred.

---

[3] *See supra* note 2.