## In re ESTATE OF Darrell RANDALL; Wallace Randall, Appellant.

### No. 09–PR–271.

District of Columbia Court of Appeals.

Submitted April 27, 2010.
Decided July 8, 2010.

Corinne G. Rosen was on the brief for appellant.

Mary C. Williams was on the brief for appellee.

Before WAGNER, KERN, and NEBEKER, Senior Judges.

WAGNER, Senior Judge:

The question presented by this appeal is whether an action for annulment of a marriage based upon a claim of lack of mental capacity of the husband may be maintained after his death. We conclude that it cannot because under our statutory scheme, such marriages are voidable, rather than void *ab initio,* and their nullity can be declared only from the date of the decree. Therefore, we affirm the trial court's order granting appellee's amended motion to dismiss.

## I.

### Factual and Procedural Background

Appellant, Wallace Randall, as next friend of his father, Darrell Randall (Dr. Randall), filed a complaint for annulment of his father's marriage to appellee, Marietta Selavonova Keene, on the ground that Dr. Randall lacked the capacity to enter into a marriage. According to the allegations in the complaint, the marriage ceremony, originally set for June 2, 2007, took place on April 7, 2007, without appellant's knowledge. On May 30, 2007, appellant's wife, Kathryn E. Randall, had filed a Petition for General Proceeding in the Probate Division of the Superior Court

seeking the appointment of a guardian and conservator for Dr. Randall on the grounds that he was incapacitated, suffered from dementia, and was the victim of financial exploitation and undue influence by appellee and others.[1] On September 20, 2007, after an evidentiary hearing, the court appointed an attorney from the fiduciary list, Causton Toney, to serve as Dr. Randall's guardian and conservator. Mr. Toney petitioned the court for authority to file an action on behalf of Dr. Randall to annul the marriage. The trial court denied the request, explaining that D.C.Code § 46–404 authorizes such actions to be filed by a "next friend."[2] Thereafter, appellant and his wife filed this action in the Family Court as next friends of Dr. Randall seeking to annul the marriage.

Appellee moved to dismiss the annulment action, but Dr. Randall died before the motion was decided. Appellee then filed an amended motion to dismiss in which she argued that the action could not be maintained after Dr. Randall's death. The case was transferred to the Probate Division of Superior Court. Concluding that a cause of action for annulment cannot be maintained after the death of one of the parties to the marriage, the Probate Court granted appellee's amended motion to dismiss.[3] The trial court reasoned that only marriages that are void *ab initio* may be attacked in collateral proceedings and that the marriage at issue in this case is merely voidable under our statutory scheme. On appeal, appellant argues that the trial court erred in its ruling because a marriage by one who lacks the capacity to consent thereto may be treated as void *ab initio* and subject to collateral attack in a proceeding to determine who may participate in a decedent's estate.

## II.

Our local statutes specify and treat differently those marriages that are considered to be void *ab initio* and those that are designated voidable upon decree. The significance of this distinction is that "a marriage void *ab initio* is subject to collateral attack at any time whereas a marriage merely voidable cannot be annulled after the death of either spouse." *Andrade v. Jackson*, 401 A.2d 990, 994 n. 9 (D.C.1979) (citing *Loughran v. Loughran*, 292 U.S. 216, 226, 54 S.Ct. 684, 78 L.Ed. 1219 (1934), and *Nunley v. Nunley*, 210 A.2d 12, 14 (D.C.1965)). By statute, marriages between specified related parties and persons whose prior marriages have not been terminated by law or death of one spouse are "absolutely void *ab initio*, without being so decreed, and their nullity may be shown in any collateral pro-

---

1. *See generally* D.C.Code §§ 21–2001 to –2085 (2001) (the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986) which provides a system of limited and general guardianships for incapacitated individuals and protective proceedings concerned with management of their estates. *See also* Super. Ct. Prob. R. 301–334 (governing intervention proceedings).

2. D.C.Code § 46–404 provides that proceedings to annul a marriage on behalf of a lunatic and certain others may be instituted by a next friend.

3. Appellant sought to amend his complaint to preclude appellee from making a claim against the decedent's estate because of the terms of a prenuptial agreement. However, the court held that leave of court was not required to amend the complaint because no responsive pleading had been filed. *See Wilson v. Wilson*, 785 A.2d 647, 649 (D.C.2001) (holding that a motion to dismiss is not a responsive pleading for purposes of Super. Ct. Civ. R. 15(a) which permits a party to amend once as a matter of course before a responsive pleading is served). No issue concerning any subsequently filed pleading or claim of a prenuptial agreement is before this court; therefore, we do not address it.

ceedings...." D.C.Code § 46–401 (2001). On the other hand, voidable marriages include the marriage of a person unable by reason of mental incapacity to give valid consent, a person under the age of 16 years, or marriages procured by fraud or force. D.C.Code § 46–403 (2001 as amended).[4] The law provides that such voidable marriages "shall be void from the time when their nullity shall be declared by decree." *Id.* The marriage at issue in this case falls within this latter category, and therefore, by statute, is voidable only from the time of the decree. *Id.; see also Martin v. Martin,* 240 A.2d 363, 365 (D.C. 1968) (holding that the trial court erred in holding that a marriage contracted by a mentally incompetent person was void *ab initio* under a comparable statutory provision).[5] As such, it cannot be annulled after the death of either spouse. *Loughran,* 292 U.S. at 226, 54 S.Ct. 684.[6]

Appellant argues that there is precedent for treating marriages like the one challenged here as void rather than voidable. He contends that one who lacks the mental capacity to marry cannot form a marital union, and therefore, the marriage should be considered void and open to collateral attack in a proceeding to determine the lawful heirs of the incapacitated person's estate. In support of his argument, appellant relies upon this court's opinion in *Andrade, supra.* The case does not support appellant's position. In *Andrade,* this court considered whether the Family Division of Superior Court had jurisdiction to annul a marriage of a deceased person, determine the existence of a common law marriage between decedent and another, and declare paternity after the death of the putative spouse/parent. *Andrade,* 401 A.2d at 991. Relying on this court's decision in *Nunley, supra,* the trial court held that the Family Division of Superior Court lacked jurisdiction to entertain the action. *Andrade,* 401 A.2d at 991. This court held that *Nunley's* jurisdictional rule requiring dismissal no longer obtained after the enactment of the District of Columbia Court Reform and Criminal Procedure Act (Court Reform Act)[7] under which all newly created internal divisions of the Superior Court have undivided authority to adjudicate civil claims and disputes, although

---

4. The "Marriage Amendment Act of 2008," D.C. Law 17–222, embodying the above-described provision of D.C.Code § 46–403 (2001 as amended), became effective September 11, 2008, prior to the date that the trial court decided this case (February 4, 2009). This amendment rewrote subparagraph 1 which previously listed as illegal the marriage of "an idiot" or "a person adjudged to be a lunatic" and substituted in lieu thereof "a person ... unable by reason of mental incapacity to give valid consent to the marriage." *See* D.C.Code § 46–403 (2001). It also repealed a provision (subparagraph 3) listing as voidable a marriage where either party for physical causes was incapable of marrying. *Id.* The changes do not affect the disposition of the case, and the parties do not argue otherwise.

5. The case was decided under the provisions of D.C.Code § 30–103 (1967) which listed as void only from the date of decree the marriage of a person adjudged to be a lunatic,

marriages procured by force or fraud, marriages by someone physically incapable or too young to consent (*i.e.,* 16 years).

6. In *Loughran,* the Supreme Court considered whether a widow could be denied a share in her deceased husband's estate because her marriage was in contravention of a statute prohibiting the remarriage of a person divorced on the ground of adultery. The Supreme Court concluded that the statute had no extraterritorial effect that prohibited her remarriage outside of the District. Particularly relevant to the present case, the Supreme Court noted that the statute did not purport to make such marriages void *ab initio,* but at most voidable, which meant that a cause of action for annulment abated upon the death of either spouse. *Id.,* 54 S.Ct. at 688.

7. Pub.L. No. 91–358, 84 Stat. 473 (1970).

orderly administration requires the issues to be resolved first in the Probate Division. *Id.* at 992–93.[8] In remanding the case for proceedings consistent with the opinion, including its transfer to the Probate Division, this court observed that "[t]he [Probate] court will then no doubt decide ... whether appellee's marriage to decedent was void *ab initio* ...." *Id.* at 994. Appellant relies upon this reference and another in a footnote, noting with a citation to a New Jersey case that "[a] marriage may be considered void *ab initio* because the parties lacked the proper consent to create a valid marriage...." *Id.* at 994 n. 9 (citing *Ramshardt v. Ballardini*, 129 N.J.Super. 445, 324 A.2d 69 (1974)).[9] However, this court stated explicitly in the very next sentence that it was not deciding whether in this jurisdiction a marriage may be deemed void if for an illegal purpose or for lack of consent. *Id.* We simply remanded for proceedings in which that determination would be considered and decided ultimately. *Andrade* did not alter in any way the statutory categorization of lack of capacity marriages as voidable upon decree and not void *ab initio*.

The other authority cited by appellant is a case from the state of New Jersey, *In re*

*Estate of Santolino*, 384 N.J.Super. 567, 895 A.2d 506 (2005). In *Santolino*, the New Jersey court held that under its statute and at common law, "the civil disability of inability to consent to the marriage allows the court to render a posthumous judgment of nullity with regard to a marriage at issue because a void marriage is deemed not to have been a marriage at all."[10] 384 N.J.Super. at 581–82, 895 A.2d at 514. Appellant argues that this court should adopt the reasoning of the New Jersey court and reach the same result and that there is nothing in the D.C.Code or applicable case law to preclude it. We disagree. Unlike New Jersey, our current statute provides expressly that marriages by a person unable to give valid consent thereto by reason of mental incapacity "shall be void from the time when their nullity shall be declared by decree." D.C.Code § 46–403 (2001 as amended). Moreover, such marriages are not among those specifically identified in D.C.Code § 46–401 as being a void *ab initio*. We have recognized that "[a] marriage merely voidable cannot be annulled after the death of either spouse."[11] *Andrade, supra*, 401 A.2d at 994 n. 9 (citing *Loughran*, 292 U.S. at 226, 54 S.Ct. 684).

**8.** In *Nunley, supra*, this court held that the Domestic Relations Branch of the D.C. Court of General Sessions, the predecessor to the Family Division of Superior Court, did not have jurisdiction to annul a marriage where the primary object of the suit was to bar decedent's putative wife from participation in the decedent's estate. 210 A.2d at 15. Prior to the Court Reform Act, this court affirmed the dismissal of an action for annulment after the death of the husband.

**9.** In *Ramshardt*, the plaintiff sought an annulment pursuant to a New Jersey statute (N.J.S.A.2A:34–1(d)) on the grounds of "a lack of mutual assent to the marital relationship." 129 N.J.Super. at 446, 324 A.2d at 70. Under New Jersey law, such marriages are totally void and not merely voidable. *Id.*

**10.** In *Santolino*, several grounds were asserted for the posthumous annulment of the marriage of an eighty-one and one-half year old man to a forty-six year old woman less than one month before he died, including lack of capacity to consent to the marriage due to mental condition. 384 N.J.Super. at 570–71, 895 A.2d at 508.

**11.** We agree with the trial court's observation that there may be sound reasons for allowing heirs and legatees to attack the marriages of incapacitated persons posthumously for the purpose of determining the rightful distribution of their estates, but that is a matter for legislative determination and not the courts, given current statutory law.

For the foregoing reasons, the judgment of the trial court granting appellee's amended motion to dismiss is affirmed.

*So ordered.*