## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Hengel Mark Richardson

v.

Sandra Irene Richardson

February 21, 2014

Case No. (Civil) CL09-2135

By Judge Randall D. Smith

This matter was before the Court on December 5, 2013. The purpose of this hearing was to determine whether or not the parties were validly married as a prerequisite to the determination of issues of equitable distribution and spousal support.

The facts of this case are somewhat out of the ordinary. The parties met in 1980 while both were in New York. They were married in South Carolina in 1982 when the wife was eighteen years old and the husband was nineteen years old. The parties' first child, Hengel, was born in 1982; the second child, Bernex, was born in 1985. Subsequently, in 1985, the wife consulted with a lawyer about a separation and child support because of the husband's severe drug addiction. The parties were only physically separated for a period of one to two weeks, and the husband promised to "get clean." The parties reconciled and resumed normal marital cohabitation. At the end of 1988, the wife became pregnant, and, in 1989, the parties' third child Kyle was born. The family then moved from Florida to the State of Georgia.

In 1990, the parties "renewed" their marriage vows in the Catholic church, in Georgia, as a sign of continued commitment to the marriage and because the marriage ceremony in 1982 was a civil ceremony. (Pl.'s Exhibits 1 & 2.) While in Georgia, the parties lived together as husband and wife, sharing a bedroom with each other and a home with the children; the parties held themselves out as husband and wife to all in the community. Neither party ever mentioned a divorce from the State of Florida. During the 1996 Olympic Games in Atlanta, the parties were near the terrorist bomb explosion, and the wife was physically injured

by the blast. The husband entered the subsequent lawsuit as a spouse because he was uninjured physically. Each party received a settlement, the wife due to physical injury and husband based upon the wife's inability to attend to full marital obligations. In 2003, the parties moved to Virginia; the fourth child, Shawn, was born here. The parties continued to live as husband and wife until they separated in September of 2004.

In 2010, the husband, who now lives in Georgia, was applying for an Automobile Dealers' License. The background check performed by the franchising agency advised the husband of the existence of a Florida divorce decree, which was entered on November 12, 1986, by the 11th Judicial Circuit Court for Dade County, Florida. (Def.'s Exhibit 1.) The husband was previously unaware of said divorce until being informed at that time. The parties filed joint federal income tax returns as husband and wife, and in 2011 and 2012, filed as "married filing separately." (Pl.'s Exhibits 4 & 5.) The husband did not inform anyone about the Florida divorce decree until sometime in 2012 because he thought that the parties might reconcile; it was after this reconciliation failed to occur that he informed his attorney about the Florida divorce decree. The wife thought that she had only sought a separation at the time and did not know of the Florida divorce until husband raised the issue in these proceedings.

The parties have researched this issue, and their positions and arguments are stated in the record; therefore, their positions and arguments need not be restated here.

"A marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy." *Kelderhaus v. Kelderhaus*, 21 Va. App. 721, 725, 468 S.E.2d 303, 304 (1996) (quoting *Kleinfield v. Veruki*, 7 Va. App. 183, 186, 372 S.E.2d 407, 409 (1988)). The State of Georgia recognized common law marriages prior to January 1, 1997; any otherwise valid common law marriage entered into before January 1, 1997, continues to be recognized as valid. Ga. Code Ann. § 19-3-1.1; *In re Estate of Robert L. Smith*, 679 S.E.2d 760, 761 (Ga. App. 2009). The party asserting a common law marriage "must establish its existence by a preponderance of the evidence." *Estate of Smith*, 679 S.E.2d at 761 (quoting *Dismuke v. C & S Trust Co.*, 407 S.E.2d 739, 741 (Ga. 1991)).

The Court has considered the law of the State of Georgia and finds that under Georgia law, the parties met the three prerequisites to a valid marriage, (1) the parties were able to contract; (2) the parties lived together as man and wife; and (3) the parties consummated this agreement simultaneously according to law. Ga. Code Ann. § 19-3-1; *see Ridley v. Grandison*, 389 S.E.2d 746, 747 (Ga. 1990) (Hunt, J., dissenting) (citing *Brown v. Brown*, 215 S.E.2d 671 (Ga. 1975)); *Estate of Smith*, 679 S.E.2d at 761; *In re Estate of Love*, 618 S.E.2d 97 (Ga. App. 2009). This all occurred

prior to January 1, 1997, and thereafter. Therefore, a common law marriage between the parties exists under Georgia law.

Applying full faith and credit, the Court finds that such is not contrary to the public policy of Virginia. *See* U.S. Const., art. IV, § 1. A common law marriage that is valid under the laws of the jurisdiction in which it was created is valid in Virginia. *See Heflinger v. Heflinger*, 136 Va. 289, 303–04, 118 S.E. 316, 320–21 (1923); *Kelderhaus*, 21 Va. App. at 725, 468 S.E.2d at 304; *Farah v. Farah*, 16 Va. App. 329, 332, 429 S.E.2d 626, 629 (1993); *Reynolds v. Reynolds*, 60 Va. Cir. 414, 416 (Rockingham Cnty. 2002). Therefore, the parties are validly married here for the purpose of dissolving their marriage, determining the issues of spousal support and equitable distribution, and all other issues arising concurrently with the divorce action.

In the alternative or in addition to the finding of a common law marriage in Georgia, the Court finds that the husband is estopped from attacking the validity of the marriage by his conduct. *Cf. Moorman v. Blackstock, Inc.*, 276 Va. 64, 78, 661 S.E.2d 404, 411 (2008) (applying the doctrine of equitable estoppel) (quoting *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980)). The husband became aware of the Florida divorce decree in 2011; the husband kept this knowledge from the wife and his own lawyer until he determined that reconciliation would not occur under terms he wanted. The wife only became aware of the divorce decree in 2012 during these proceedings.

This matter will proceed forward as any divorce action to dissolve a marriage and adjudicate the rights and responsibilities of the parties.